# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3990

_____

Lawrence J. Mathieu,

       Plaintiff-Appellee,

v.

Gopher News Company,

       Defendant-Appellant.

    \*   Appeal from the United States
    \*   District Court for the
    \*   District of Minnesota.

_____

Submitted:  October 15, 2001

Filed:  December 11, 2001

_____

Before WOLLMAN, Chief Judge, LAY and RILEY, Circuit Judges.

_____

LAY, Circuit Judge.

A jury found that Gopher News Company discriminated against Lawrence J. Mathieu on the basis of disability. It awarded back pay and damages for emotional harm and recommended front pay. The magistrate judge[1] sitting by consent of the parties entered judgment on the verdict and awarded the front pay recommended by the jury. The magistrate judge multiplied the entire award by 1.5 pursuant to Minnesota Human Rights Act (MHRA) § 363.071 subd. 2 and awarded Mathieu

_____

[1]The Honorable Franklin L. Noel, Chief United States Magistrate Judge, District of Minnesota, presiding.

attorney's fees. Gopher News asserts various errors of law. We affirm in part and reverse in part.

Mathieu worked for Gopher News for thirty-four years, the last sixteen as Manager of Customer Delivery Services. This job not only involved managerial and administrative tasks, but also required Mathieu to be available to fill in for absent route drivers. The latter duties could involve ten to twelve hour days on the road and require lifting twenty to sixty pound "totes" out of a truck.

In January 1996, at the age of fifty-three, Mathieu was diagnosed with arterial blockage. He underwent quintuple bypass surgery. In March of 1996, Mathieu returned to work for Gopher News with six-hour shifts, three days per week. A few weeks later, he returned full-time, subject to a forty pound lifting restriction. Gopher News made reasonable accommodations for Mathieu's limitations. Shortly after returning full-time Mathieu's doctors lifted all restrictions, and by the end of the year he was again working fifty to seventy hour weeks.

During late December 1996, Mathieu again experienced chest pains. His doctors explained that the pain was musculo-skeletal in origin; the lifting required by his job was impeding healing of the surgical incision through his sternum. His doctors reimposed restrictions, limiting Mathieu to a forty hour week and a forty pound lifting maximum. Mathieu informed his employer. Four days later he was terminated as Manager of Customer Delivery Services. Gopher News asserted at trial that his position was eliminated. Mathieu alleged he was terminated due to age and disability discrimination.

After a trial, the jury rejected the age discrimination claim but found for Mathieu on the disability discrimination claim. It awarded back pay of $94,370; recommended front pay of $288,466; and awarded damages for mental anguish in the amount of $165,000. The magistrate judge denied all post-trial motions by Gopher

News and added interest for back pay, reduced the front pay award to present value, and multiplied the entire award by 1.5 pursuant to the MHRA. The court awarded Mathieu attorney's fees.

Gopher News asserts various issues on appeal. It argues Mathieu's restrictions, a forty hour week and a forty pound lifting limit, do not constitute a disability under the Act. It asserts there was insufficient evidence for the jury to find Gopher News regarded Mathieu as disabled. It asserts the magistrate judge erred by awarding front pay rather than reinstatement and argues that all awards were excessive. It argues the magistrate judge erroneously held that Mathieu reasonably mitigated his damages. Gopher News argues the magistrate judge erred in its application of the MHRA multiplier. Finally, Gopher News asserts the magistrate judge erred by not granting a new trial.

## I. Disability

Initially, Gopher News asserts that, as a matter of law, a forty hour week and a forty pound lifting restriction do not substantially limit one's ability to work and, therefore, do not constitute a disability. 42 U.S.C. § 12102(2)(A). It also asserts there is no evidence it ever regarded Mathieu as disabled. 42 U.S.C. § 12102(2)(C). It urges that the magistrate judge erred as a matter of law in finding Mathieu disabled. Mathieu engages these arguments on the merits but also asserts this court should not consider the merits because Gopher News failed to preserve the questions by failing to renew its motion under Federal Rules of Civil Procedure 50(b) at the close of the evidence at trial. We agree with this latter contention.

Gopher News moved for a judgment as a matter of law at the close of Mathieu's case in chief. The motion came at the end of the second day of trial, so the trial court reserved ruling until the parties could present arguments the following day. The court heard arguments the next morning and denied Gopher News' motion. The

-3-

trial thereafter continued; Gopher News presented its defense and Mathieu took the stand in rebuttal. This testimony lasted between five and six hours. The plaintiff rested his rebuttal at the end of the day. Gopher News did not renew its motion for judgment as a matter of law at the close of all the evidence, and the court submitted the case to the jury.

Gopher News asserts various grounds on which its failure to renew its motion at the close of the evidence should be excused. It asserts Rule 50(b) does not apply because the issues it presents involve purely questions of law, not implicating the sufficiency of the evidence. Alternatively, it asserts an exception to the rule applies; it asks the court to adopt an exception to the rule "where its purposes have been met."

First, it is clear that Rule 50 applies. Judgment as a matter of law is appropriate where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . . ." Fed. R. Civ. P. 50(a). In Americans with Disabilities Act (ADA) cases, the question presented is whether the particular individual, under the evidence presented, suffers a substantial limitation on a major life activity and, thus, a disability. This court is instructed to view the evidence for purposes of this individual inquiry. See, e.g. Sutton v. United Airlines, Inc., 527 U.S. 471, 483 (1999) ("[D]isabilities [should] be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such individual.' Thus, whether a person has a disability under the ADA is an individualized inquiry.") (internal citations omitted); Webner v. Titan Distribution, Inc., 267 F.3d 828, 834 (8th Cir. 2001) (restriction of lifting up to fifty pounds "substantially limited [employee's] ability to work, to twist, to bend, and to stand, in addition to limiting his ability to lift"); Kellogg v. Union Pacific R. Co., 233 F.3d 1083, 1087 (8th Cir. 2000) ("Given the numerous factors a court must weigh, the determination of whether an individual is substantially limited in the major life activity of working is made on a case by case basis."); Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 949 (8th Cir. 1999)

-4-

("[T]he ADA is concerned with preventing substantial personal hardship in the form of significant reduction in a person's real work opportunities. A court must ask 'whether the particular impairment constitutes for the particular person a significant barrier to employment' . . . .") (citing <u>Webb v. Garelick Mfg. Co.</u>, 94 F.3d 484, 488 (8th Cir. 1996)).

This case is no different. Gopher News asks this court to rule that a forty hour week and a forty pound lifting restriction do not constitute a disability as a matter of law. However, as stated, every case requires an individualized inquiry into the impact of the plaintiff's restrictions. Likewise, whether Mathieu is disabled required inquiry into the sufficiency of the evidence presented at trial. The trial court considered the evidence presented in drawing its conclusions on the disability issue. <u>See</u> Order (Nov. 1, 2000) at 13-18. Consequently, we hold Rule 50 applies.

Rule 50(b) states:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment–and may alternatively request a new trial or join a motion for a new trial under Rule 59. . . .

It is well established that judgment as a matter of law following a jury verdict cannot be had by a party who fails to renew its motion, pursuant to Rule 50(b), at the close of all the evidence. Interpretation of Rule 50(b) is set out by the Advisory Committee. <u>See</u> Fed. R. Civ. P. 50(b) advisory committee's note (1963 Amendment) ("A motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence."); Fed. R. Civ. P. 50(b) advisory committee's note (1991 Amendment) ("This provision

retains the concept of the former rule that the post-verdict motion is a renewal of an earlier motion made at the close of the evidence."). This interpretation is cited by recognized authorities on federal practice and procedure. See 9 James Wm. Moore, et al. *Moore's Federal Practice* §§ 50.20[3], 50.40[1], 50.91[1] (3d ed. 2001). It is unanimously approved by the courts, including this circuit. See, e.g. Jackson v. City of St. Louis, 220 F.3d 894, 896 (8th Cir. 2000); Duckworth v. Ford, 83 F.3d 999, 1001 (8th Cir. 1996); Pulla v. Amoco Oil Co., 72 F.3d 648, 655 (8th Cir. 1995).

The rule also is supported by sound policy. The Seventh Amendment preserves the right to a jury trial for civil litigants. U.S. Const. Amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."). One purpose of the rule requiring renewal of a motion for judgment as a matter of law is to avoid any question arising under that amendment. Fed. R. Civ. P. 50(b) advisory committee's note (1991 Amendment) (citing Montgomery Ward & Co. v. Duncan, 311 U.S. 243 (1940)). Specifically, "[t]he twin purposes of the rule are to: (1) enable the trial court to examine all of the evidence before submitting the question to the jury; and (2) alert the opposing party to any defect in its case, thereby affording it an opportunity to cure any such defects." Pulla, 72 F.3d at 655 n.8 (citing Halsell v. Kimberly-Clark Corp., 683 F.2d 285, 294 (8th Cir. 1982), cert. denied, 459 U.S. 1205 (1983); 5 Moore § 50.08 at 50-88).

Notwithstanding the venerable rule, Gopher News urges this court to make an exception for its failure to renew its motion. It cites several sources for such an exception, none of which we find persuasive.

First, Gopher News urges as an exception that "technical noncompliance with Rule 50(b) may be excused [where] the purposes of the rule are satisfied." Scottish Heritable Trust, PLC v. Peat Marwick Main & Co., 81 F.3d 606, 610 (5th Cir. 1995).

This circuit has never recognized this exception.  Moreover, even were we to adopt it, Gopher News has not satisfied the exception's requirements.  For example, Gopher News' president testified after the defendant had moved for judgment as a matter of law following plaintiff's case.  As the employer's primary decision maker, his testimony clearly weighed on the ultimate decision as to whether Gopher News regarded Mathieu as disabled.  Indeed, he expressly testified that he did not perceive Mathieu as disabled, although he was aware of Mathieu's restrictions.  Mathieu testified on rebuttal.  Consequently, the trial court had no opportunity to examine all of the evidence before submitting the question to the jury.

> Similarly, Gopher News asserts an exception where
>
> (1) the party files a Rule 50 motion at the close of the plaintiff's case; (2) the district court defers ruling on the motion; (3) no evidence related to the claim is presented after the motion; and (4) very little time passes between the original assertion and the close of defendant's case.

Pulla, 72 F.3d at 656 (discussing the exception in dicta).[2]  This circuit has never adopted this "broad exception" to Rule 50(b).  We do not believe it would be proper to adopt it here.  The language and traditional application of Rule 50 are clear; objections must be filed at the close of the evidence to preserve any post-trial challenges to the verdict.  This is the clearly established rule in this circuit.  See BE & K Constr. Co. v. United Bhd. of Carpenters & Joiners of Am., 90 F.3d 1318, 1325

---

[2]In Pulla, a panel of this court recognized that we have previously assumed, without deciding, that we would adopt this exception.  See Myers v. Norfolk Livestock Market, Inc., 696 F.2d 555, 558 (8th Cir. 1982).  However, the Pulla court also recognized authority which refused to adopt this "flexible approach."  See Pulla, 72 F.3d at 655 n.11 (citing DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193, 1194 n.4 (3d Cir. 1978).  We suggest the latter approach is the correct one; Rule 50's clear command should be strictly construed.  Cf. Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163 (1993) (federal courts have no discretion to ignore civil rules).

(8th Cir. 1996) ("If a party does not move for judgment as a matter of law at the close of all the evidence, it normally cannot later argue that there was insufficient evidence to support the verdict."). Strict adherence to the rule comports with its underlying policy of preventing questions concerning compliance with the Seventh Amendment. See Fed. R. Civ. P. 50(b) advisory committee's note (1991 Amendment) (citing Montgomery Ward, 311 U.S. 243.

However, even if we were to adopt such an exception to Rule 50(b), Gopher News would not satisfy its requirements. Gopher News moved for judgment as a matter of law following the close of Mathieu's case, satisfying the first requirement. However, the court did not defer its ruling or otherwise suggest that Gopher News need not renew the motion at the close of the evidence; it ruled immediately following the parties' arguments on the third day of trial. Moreover, evidence concerning the issues of disability or perceived disability was presented after Gopher News' motion. As noted above, both Gopher News' president and Mathieu testified on the final day. Finally, more than "a very little time" passed between the court's ruling on the motion and the close of the evidence. Over five hours of testimony were heard and at least four witnesses testified during that time. We hold that Gopher News would fail to satisfy the requirements for the broad exception to Rule 50(b) it suggests.

On the basis of the credible evidence presented, the jury found that Mathieu was disabled, or at least Gopher News perceived him as disabled. We cannot find the magistrate judge committed plain error by enforcing this verdict and affirm his judgment refusing to grant Gopher News judgment as a matter of law.

## II. Remedies

## A. Reinstatement versus Front Pay

Gopher News asserts the magistrate judge erred by awarding Mathieu front pay rather than reinstatement. Front pay is an exceptional remedy and should only be awarded in lieu of reinstatement when extraordinary circumstances render reinstatement "impractical or impossible." Newhouse v. McCormick & Co., Inc., 110 F.3d 635, 641 (8th Cir. 1997) (citing Philipp v. ANR Freight Sys., Inc., 61 F.3d 669, 674 (8th Cir. 1995)). However, the cases are legion that "substantial hostility, above that normally incident to litigation, is a sound basis for denying reinstatement." United Paperworkers Int'l Union Local 274 v. Champion Int'l Corp., 81 F.3d 798, 805 (8th Cir. 1996); see also Denesha v. Farmers Ins. Exchange, 161 F.3d 491, 501 (8th Cir. 1998) (holding that hostility justifying front pay should be such that "a productive and amicable working relationship would be impossible") (citing Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1065 (8th Cir. 1988)).

"In making a front pay award, the district court is not free to reject or contradict findings by the jury on issues that were properly submitted to the jury," although it "'retains its discretion to consider all the circumstances in th[e] case when it determines what equitable relief may be appropriate.'" Newhouse, 110 F.3d at 641 (citing Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1101 (8th Cir. 1982)). A judgment of the district court awarding front pay is reviewed for abuse of discretion. See id.

Following trial, the jury found that Mathieu was disabled or had been perceived as disabled by Gopher News.[3] Because Gopher News did not preserve its motion for

---

[3]On appeal, there is some confusion as to precisely what the jury found. The relevant jury question, as presented by the court, read, "did the plaintiff have, or was

judgment as a matter of law, the court was bound by that finding. Turning to the question of the appropriate equitable relief, the court found evidence of hostility between Mathieu and Gopher News likely to preclude an amiable employment relationship. The court noted Mathieu had been unfairly terminated after thirty-four years of service. It found that Gopher News failed to offer reasonable accommodations at the time of his discharge, and if Mathieu was reinstated, additional disputes about reasonable accommodations for his ongoing limitations would be inevitable. Perhaps most importantly, Gopher News' president was the person responsible for the discriminatory decisions and would be the person ultimately responsible for overseeing any reinstatement of Mathieu. This court has held a similar relationship to be sufficient evidence of hostility to preclude a finding of abuse of discretion by the district court in awarding front pay. See Newhouse, 110 F.3d at 641. We hold that the magistrate judge did not abuse his discretion by awarding front pay over reinstatement.

## B. Amount of the Front Pay Award

Gopher News asserts the amount of front pay awarded by the magistrate judge was clearly excessive. Following its deliberations, the jury recommended a front pay award of $288,466. The magistrate judge recognized that the award was advisory in nature, but awarded the full amount, discounting it to present value. Gopher News believes this award should be reversed. The lower court's award of front pay is

---

he perceived by defendant to have, a disability." Trial Transcript at 750. Thus, the general verdict makes it uncertain whether the jury found that Mathieu was actually disabled under 42 U.S.C. § 12102(2)(A) or only perceived as disabled under 42 U.S.C. § 12102(2)(C) or both as long as there was substantial evidence to support either finding. Fortunately, this uncertainty has no effect on our decision. An affirmative answer to either one satisfies the disability requirement for liability. See 42 U.S.C. § 12102(2).

reviewed for abuse of discretion. <u>Hukkanen v. Int'l Union of Operating Eng'rs Local No. 101</u>, 3 F.3d 281, 286 (8th Cir. 1993).

Gopher News asserts the amount of front pay awarded by the magistrate judge represents eight years of front pay. Fifty-seven years old at the time the trial concluded, an award of eight years front pay constitutes the remainder of Mathieu's working career, assuming retirement at age sixty-five. Gopher News argues the magistrate judge failed to make specific factual findings why the amount awarded was required to make Mathieu whole and, in any event, awarding front pay for the remainder of Mathieu's working life is inherently speculative. Because there is no evidence that Mathieu, an employee at will, would have worked for Gopher News until age sixty-five or that he will be unable to find comparable work within the next eight years, Gopher News asserts that the magistrate judge abused his discretion by awarding front pay for the entire period.

In <u>United Paperworkers</u>, 81 F.3d 798, the lower court awarded front pay for the remainder of the plaintiff's working life. That award amounted to front pay for twenty-four years. We stated: "An award of front pay until retirement ignores the plaintiff's duty to mitigate damages and the district court's corresponding obligation to estimate the financial impact of future mitigation." <u>Id.</u> at 805. We also noted that plaintiff's young age made mitigation sufficiently likely that the award of front pay was an abuse of discretion. <u>Id.</u>

In <u>Newhouse</u>, the lower court also awarded front pay for the remainder of the plaintiff's working life. That plaintiff had been employed by the defendant for twenty-three years. This court affirmed the award. <u>See</u> <u>Newhouse</u>, 110 F.3d at 641-42 ("If a plaintiff is close to retirement, front pay may be the only practical approach.") (citing <u>Duke v. Uniroyal, Inc.</u>, 928 F.2d 1413, 1424 (4th Cir.), <u>cert. denied</u>, 502 U.S. 693 (1991)).

Likewise, Mathieu was near retirement by the close of the trial and, obviously, is even closer now. At trial, Mathieu testified he had planned to work for Gopher News until age sixty-five. He provided expert testimony that given his minimal education, age, employment with one company for thirty-five years,[*] and disability it was unlikely he would ever achieve the level of income and benefits he enjoyed in his prior position There also was evidence that Mathieu's attempts to mitigate his damages had failed. There was evidence supporting the amount of front pay awarded as the amount necessary to compensate Mathieu for his lost earnings. For this court to speculate otherwise and simply lower the number of years of front pay would not be based on any evidence. Under the circumstances, we hold the magistrate judge did not abuse his discretion by relying upon this evidence and awarding front pay in the amount recommended by the jury.

## C. The Minnesota Human Rights Act Multiplier

Following calculation of the awards, the magistrate judge multiplied the entire award by 1.5 to reach the total amount awarded to Mathieu. The magistrate judge justified this action, stating it would serve to entice members of the bar to privately enforce the MHRA. Gopher News asserts the magistrate judge's application of the MHRA multiplier was error because he did not consider whether application of the multiplier was necessary to fully compensate Mathieu, and in any event, the size of Mathieu's award was sufficient to entice members of the bar to enforce the MHRA without multiplication. Gopher News also asserts the multiplier should not be applied to awards for front pay or emotional harm. Application of the MHRA multiplier is vested in the trial courts' discretion. See Phelps v. Commonwealth Land Title Ins. Co., 537 N.W.2d 271, 274, 276 (Minn. 1995).

---

[*]The record contains an agreement of both parties that Mathieu had worked thirty-four years; the expert mistakenly stated that he had worked thirty-five years.

-12-

The argument that application of the multiplier must be tied to compensatory purposes has been rejected by the Minnesota courts. In Phelps, the Minnesota Supreme Court held that "[s]ubdivision 2 contains no guidelines as to when or under what circumstances a trial court may multiply damages." 537 N.W.2d at 274. The court refused to manufacture its own guidelines, rather stating that "subdivision 2 unambiguously vests trial courts with the discretion to multiply damages." Id. It went on to hold that, "[Defendant's] contention that a trial court must tie the multiplication of damages to a finding of uncompensated damages is erroneous, and to the extent that [prior Minnesota cases] support this contention, they too are erroneous." Id. at 275.

Likewise, the court's determination to encourage private enforcement of the MHRA is a valid justification for application of the multiplier. Not only is the court's discretion broad, but the Minnesota Supreme Court also noted in Phelps that "[l]egislative history indicates that one objective the legislature sought to achieve through enactment of subdivision 2 was the enticement of the private bar into bringing claims based on violations of the MHRA." 537 N.W.2d at 277 (citing Hearing on S.F. 1762, S. Judiciary Comm. 73rd Minn. Leg., March 28, 1984 (comments of Sen. Reichgott)). That being the case, Gopher News' argument that the base award itself provided incentive for private enforcement fails for lack of common sense. If encouraging private enforcement of the MHRA is a legitimate goal, a larger award will provide greater incentive toward that end.

Gopher News' arguments that the magistrate judge erred by multiplying the jury's awards for front pay and emotional harm have some partial merit. The MHRA § 363.071 subd. 2 states in pertinent part:

> [If the court] finds that the respondent has engaged in an unfair
> discriminatory practice the [court] shall order the respondent to pay
> an aggrieved party, who has suffered discrimination, compensatory

damages in an amount up to three times the actual damages sustained. In all cases, the [court] may also order the respondent to pay an aggrieved party, who has suffered discrimination, damages for mental anguish or suffering and reasonable attorney's fees, in addition to punitive damages in an amount not more than $8,500.

The magistrate judge's application of the multiplier to the emotional harm award is a close question. As noted above, the multiplier is to be applied to actual damage awards in order to determine total compensatory damages. See MHRA § 363.071 subd. 2. At first blush, the plain language of subdivision 2 appears to limit the definition of actual damages for the purpose of that statute. The first sentence states that actual damages may be multiplied. The second sentence states that the district court may *also* award damages for mental anguish or suffering. One could read this subdivision, paying particular attention to the order of the sentences and the fact that damages for mental anguish are specifically set apart, to mean that damages for emotional harm are to be calculated apart from those damages subject to multiplication, whatever they may be. Indeed, such an interpretation of the statute has been followed frequently, if implicitly, by the Minnesota courts. See, e.g. Todd v. Ortho Biotech, Inc., 949 F. Supp. 724, 730 (D. Minn. 1996), rev'd on other grounds 138 F.3d 733 (8th Cir. 1998); Kriss v. Sprint Communications Co., 851 F. Supp. 1350, 1360-61 (D. Minn. 1994), rev'd on other grounds 58 F.3d 1276 (8th Cir. 1995); Phelps, 537 N.W.2d at 273, 273 (noting trial court action); Bradley v. Hubbard Broadcasting, Inc., 471 N.W.2d 670, 674 (Minn. Ct. App. 1991) (same); Melsha v. Wickes Cos., Inc., 459 N.W.2d 707, 708-09 (Minn. Ct. App. 1990) (same). But see Kohn v. City of Minneapolis Fire Dept., 583 N.W.2d 7, 10 (Minn. Ct. App. 1998) (noting that the district court multiplied award for emotional harm).

However, as a general rule, actual damages include awards for emotional harm. See Phelps, 537 N.W.2d at 275 & n.2 (noting that it is well settled that "actual damages" are synonymous with "compensatory damages," and compensatory

-14-

damages include both general and special damages) (citing Black's Law Dictionary 390 (6th ed.)); <u>Minneapolis Police Dept. v. Minneapolis Comm'n on Civil Rights</u>, 402 N.W.2d 125, 132 (Minn. Ct. App. 1987), <u>aff'd</u> 425 N.W.2d 235, 238 (Minn. 1988) ("An actual compensable injury means physical injury, monetary expenses, lost earnings, impairment of reputation, personal humiliation, or mental anguish."). Moreover, although apparently no Minnesota court has expressly addressed this issue in a published opinion, the Minnesota Court of Appeals has done so in an unpublished opinion. It held that damages for emotional distress were actual damages subject to multiplication. <u>Huffman v. Pepsi-Cola Bottling Co. of Minneapolis & St. Paul</u>, No. C7-94-2404, 1995 WL 434467 at *5 (July 25, 1995) (unpublished opinion) ("Damages for emotional distress, however, are included as part of actual damages. As such, those damages are subject to being [multiplied]."). That opinion lacks precedential value, but it makes clear that the multiplier provision is subject to multiple interpretations. We do not sit as final arbiters of questions of state law. Consequently, we cannot say the magistrate judge abused his discretion by adopting one plausible interpretation of the multiplier provision.

We do not arrive at the same conclusion when considering the use of the one and one-half multiplier authorized by MHRA on the issue of front pay. Although, traditionally, we have left questions of front pay to the discretion of the district court and have seldom intervened in the award of front pay or in the amount of front pay, there is no precedent or even dicta by any Minnesota court stating that the multiplier should be used to increase awards of front pay. On the contrary, we find numerous reasons why the MHRA's authorization to multiply actual damages provides no basis on which to multiply an award of front pay.

The MHRA authorizes multiplication of actual damages sustained. <u>See</u> MHRA § 363.071 subd. 2. Front pay is an equitable remedy, not legal damages. <u>See</u> <u>Newhouse</u>, 110 F.3d at 641. Although the magistrate judge utilized an advisory jury in deciding whether front pay or reinstatement should be awarded, it was the judge

who rejected reinstatement and ordered front pay from the time of Mathieu's termination to the date that he would turn sixty-five. Moreover, as we have noted in several cases, front pay is the alternative to the preferred equitable remedy of reinstatement. See, e.g. Kramer v. Logan County Sch. Dist. No. R-1, 157 F.3d 620, 626 (describing front pay as "not so much a monetary award for the salary that the employee would have received but for the discrimination, but rather the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible"). It should be obvious that the multiplier under the Minnesota statutes would not be awarded on top of reinstatement; there is no monetary award to be multiplied when reinstatement is determined proper. This counsels against multiplying its equitable alternative.

An award of front pay also is inherently speculative in length of time and when considering possible mitigation by reason of other employment. It is based on probabilities rather than actualities. This easily distinguishes it from damages which have been actually incurred. Indeed, the mere fact that a front pay damage award is discretionary makes it distinguishable from the award of back pay, which can be readily determined within a degree of reasonable certainty. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 416 (1975) (noting that courts' discretion to award back pay is severely limited by a congressionally imposed presumption in favor of back pay awards in Title VII cases).

Although the decision to award front pay lies within the discretion of the district court in order to make the plaintiff whole, our only real guidance as to what the Minnesota courts might do under similar circumstances comes from the treatment of front pay in the federal courts. As noted above, this circuit treats front pay as an equitable remedy, not damages. In a related context, the Supreme Court has clearly stated that front pay is not included in the measure of compensatory damages under Title VII. See Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843 (2001) ("[W]hen § 1981a is read as a whole, the better interpretation is that front pay is not

-16-

within the meaning of compensatory damages . . . .").[4]  Under these circumstances, we find little justification for a judge to multiply this discretionary award under Minnesota law without precedent or at least better guidance as to the nature of front pay.

On this basis we remand the award of front pay and request the magistrate judge to amend his judgment by eliminating the multiplier as to that element of the judgment.

## D.  Remittitur of the Award for Emotional Harm

Gopher News argues the award of $165,000 for emotional distress is excessive and lacks evidentiary support.  Consequently, it argues the magistrate judge erred by not remitting the award.  We reject this argument.

The court reviews a denial of a remittitur for "a manifest abuse of discretion." Norton v. Caremark, Inc., 20 F.3d 330, 340 (8th Cir. 1994). The test for setting aside a verdict as excessive is whether the amount of the damages "shocks the conscience." Verhel v. Indep. Sch. Dist. No. 709, 359 N.W.2d 579, 591 (Minn. 1984).  On appeal, the appellate court must "recogniz[e] that the trial court has heard the evidence and knows the community's standards."  Norton, 20 F.3d at 340 (citing Am. Bus. Interiors, Inc. v. Haworth, Inc. 798 F.2d 1135, 1146 (8th Cir. 1986)).

Gopher News asserts the only evidence supporting an award for emotional distress was Mathieu's self-serving testimony.  It notes there was no evidence from any medical professional to the effect that Mathieu suffered mental anguish or that he required treatment for such a condition.  It urges this is insufficient evidence to

---

[4]As noted, § 363.071 subd. 2 considers the multiplier to be used as a means to award "compensatory damages."  See supra p.13.

support the jury's award or, alternatively, that the award is excessive based on Mathieu's vague and ill-defined assertions.

Gopher News' assertion that Mathieu was obliged to offer expert testimony to justify an award for emotional distress misses the mark. In <u>Kim v. Nash Finch Co.</u>, 123 F.3d 1046 (8th Cir. 1997), we held that "[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden." <u>Id.</u> at 1065 (citing <u>Turic v. Holland Hospitality, Inc.</u>, 85 F.3d 1211, 1215 (6th Cir. 1996)). As the magistrate judge recognized, the import of this holding is that the testimony of a medical expert is not a prerequisite for recovery for emotional harm. At trial, Mathieu's testimony in this regard apparently was effective. The magistrate judge noted that Mathieu lost his job of thirty four years, was forced to reduce his standard of living, and had become depressed. The magistrate judge noted that those facts, presented through Mathieu's testimony, were "more than sufficient to support the jury's emotional distress award." Order (Nov. 14, 2000) at 23. He further held "the award was not simply for emotional distress, but was made for a combination of factors including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life." <u>Id.</u>

In short, we cannot say our consciences are shocked by this award. Certainly, another jury may have come out with a lower figure, but yet another may have awarded a higher amount. We cannot say that the magistrate judge committed a manifest abuse of discretion by enforcing the damages this jury awarded. We affirm.

## E.  Remittitur of the Back Pay Award

Gopher News argues the jury's award of back pay is excessive because Mathieu refused to reasonably mitigate his damages. Consequently, it argues the magistrate judge erred by not remitting the award. The court reviews a denial of a remittitur for a manifest abuse of discretion. <u>Norton</u>, 20 F.3d at 340.

-18-

Gopher News asserts that, following elimination of Mathieu's position, it offered him three other positions and also asked him to name positions within the company he thought he could handle. It argues these positions were "substantially equivalent" to his former position, and the only reason Mathieu turned them down is they were less highly compensated. Because lower pay alone is an insufficient reason to turn down a substantially equivalent position, Gopher News argues Mathieu failed to use reasonable diligence to mitigate his damages by turning them down.

A party harmed by a discriminatory employment decision is subject to an affirmative duty to mitigate his damages by reasonably seeking and accepting other suitable employment. Anderson v. Hunter, Keith, Marshall & Co., Inc., 417 N.W.2d 619, 627 (Minn. 1988). Finding suitable employment does not require a party to "go into another line of work, accept a demotion, or take a demeaning position . . . ." Ford Motor Co. v. EEOC, 458 U.S. 219, 231 (1982). A plaintiff's duty is one of reasonable diligence to seek out or not refuse a job that is substantially equivalent to the one at issue. Parrish v. Immanuel Med. Ctr., 92 F.3d 727, 735 (8th Cir. 1996). A plaintiff's efforts to mitigate need not be successful but must represent an honest effort to find substantially equivalent work. Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1065 (8th Cir. 1988).

The first question raised by Gopher News' argument is whether the positions it allegedly offered represent substantially equivalent work Mathieu was required to accept. We believe the magistrate judge did not abuse his discretion by finding the answer to be no. The magistrate judge found that none of the positions offered by Gopher News offered a comparable salary and none offered Mathieu health benefits. According to the magistrate judge, "[a]ccepting a job paying significantly less and not offering the same benefits is tantamount to a demotion and is demeaning to the person seeking job loss." Order (Nov. 14, 2000) at 26. While this may overstate the case somewhat, it is clear that the positions offered by Gopher News were lower within the company's hierarchy than his former position as Manager of Customer Delivery

Services.  We believe any such position reasonably could be considered a demotion.  Moreover, as we noted above, the magistrate judge found that any return by Mathieu to Gopher News would be marked by hostility sufficient to preclude reinstatement.  Clearly, employment marred by hostility is not substantially equivalent to an otherwise similar position in an amiable environment.  Therefore, we hold the magistrate judge did not abuse his discretion by not considering the alternative positions substantially equivalent.

Of course, the burden to mitigate damages rests with the plaintiff, not the defendant.  Even though Gopher News' proposed positions were not substantially equivalent, that fact does not relieve Mathieu of his burden to exercise reasonable diligence to find suitable employment with another employer.  However, the evidence presented at trial tended to show that Mathieu applied with eight to ten employers during the first three months after he left Gopher News.  For three months after that Mathieu devoted six to eight hours per week looking for work.  Mathieu offered expert testimony that his job search was "very good."  Certainly, a party in Mathieu's position might have exerted more effort looking for employment.  We may have demanded more in the magistrate's position.  However, on the evidence presented at trial we cannot say the magistrate committed a manifest abuse of discretion by finding that Mathieu made an honest effort and exercised reasonable diligence to mitigate his damages.

## F.  New Trial

Finally, Gopher News asserts the jury's verdict was irreparably tainted by manifest passion and prejudice.  It asserts, in light of the high award and lack of a history of discriminatory acts, the jury must have been moved by passion and prejudice rather than a careful weighing of the evidence.  It urges a new trial is the only effective remedy.  We reject this argument as well.

A motion for a new trial should be granted only if the jury's verdict was "against the great weight of the evidence so as to constitute a miscarriage of justice." Denesha, 161 F.3d at 497 (citing Pulla, 72 F.3d at 656). As noted above, Gopher News raises a number of close questions on appeal. Addressing several of those questions, we noted that a reasonable mind could have come out differently. However, the fact that reasonable minds could disagree on the proper verdict does not show that the verdict the jury actually reached is against the great weight of the evidence; indeed quite the contrary. Therefore, we cannot find the jury verdict to constitute a miscarriage of justice.

The order of the district court is reversed to the extent it applied MHRA § 363.071 subd. 2 to multiply the jury's award of front pay. For this purpose, the case is remanded to the district court for further action consistent with this opinion. The judgment of the district court is affirmed in all other respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.