In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-3379 and 01-3699

George S. Szmaj,

Plaintiff-Appellant,

v.

American Telephone & Telegraph Company,

Defendant-Appellee.

Appeals from the United States District Court
for the Central District of Illinois.
No. 99 C 1353--Joe B. McDade, Chief Judge.

Argued April 19, 2002--Decided May 28, 2002


   Before Bauer, Posner, and Easterbrook,
Circuit Judges.

   Posner, Circuit Judge.  The plaintiff
brought suit under the Americans with
Disabilities Act and is appealing from
the grant of judgment as a matter of law
to the defendant, his former employer,
after a jury rendered a verdict for the
plaintiff. The plaintiff has an
unpleasant physical ailment known as
congenital nystagmus, which makes it
difficult for him to focus his eyes. The
condition prevents him from holding a job
in which he has to spend more than
50percent of his time reading. A long-
term employee of AT&T, he several years
ago applied for a job in the company that
required him to read a computer screen
for at least 80 percent of the workday.
This was too much for him. He contends,
and for purposes of the appeal we accept,
that the company made no effort to
accommodate his condition by giving him a
job that would require less reading. And
the Act does impose a duty of
accommodation. But he has put the cart
before the horse. The duty of
accommodation arises only if the employee
is determined to have a disability within
the meaning of the Act, e.g., Hoffman v.
Caterpillar, Inc., 256 F.3d 568, 572 (7th
Cir. 2001); Bombard v. Fort Wayne
Newspapers, Inc., 92 F.3d 560, 563 (7th
Cir. 1996); Gelabert-Ladenheim v.
American Airlines, Inc., 252 F.3d 54, 59

and n. 5 (1st Cir. 2001); Swain v. Hillsborough County School Board, 146 F.3d 855, 858 (11th Cir. 1998), and we agree with the district judge that no jury could reasonably find that the plaintiff did have such a disability.

A disability is a condition that substantially prevents a person from engaging in one of the major activities of life, such as walking, seeing, or reproduction. Bragdon v. Abbott, 524 U.S. 624, 639 (1998); Furnish v. SVI Systems, Inc., 270 F.3d 445, 449 (7th Cir. 2001); Nielsen v. Moroni Feed Co., 162 F.3d 604, 610 n. 11 (10th Cir. 1998). We can imagine, though with some difficulty, a society of bookworms in which a person unable to read more than 50 percent of the time would be deemed unable to engage in a major activity of life. That is not our society. To be unable to read all day long is a misfortune for someone who loves to read or who wants to hold a job (a judgeship for example!) that requires continuous reading, but the ability to read all day long is not a major life activity. There is case authority that to have enough vision to be able to read a significant part of the day is such an activity, see Bartlett v. New York State Board of Law Examiners, 226 F.3d 69, 80–82 (2d Cir. 2000); Gonzalez v. National Board of Medical Examiners, 225 F.3d 620, 626 (6th Cir. 2000), though also authority against, see Hileman v. City of Dallas, 115 F.3d 352, 355 n. 4 (5th Cir. 1997) (weak authority, however, because there is no discussion of the point, only a conclusion), but that much vision the plaintiff has. True, he cannot read at all without some discomfort, because his difficulty in focusing is continuous; but discomfort and disability are not synonyms. Weiler v. Household Finance Corp., 101 F.3d 519, 526-27 (7th Cir. 1996); Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 187 (3d Cir. 1999); cf. Stuckey v. Sullivan, 881 F.2d 506, 509 (7th Cir. 1989); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). Otherwise a very large fraction of the work force would be disabled.

We can imagine a person who though disabled within the meaning of the Act is by heroic efforts able to work even without an accommodation, and we agree that such a person should not be penalized by being deemed not to be

disabled and so not entitled to an accommodation when he finally seeks one. Cf. Jones v. Shalala, 21 F.3d 191, 192-93 (7th Cir. 1994); Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir. 1998); Cline v. Sullivan, 939 F.2d 560, 565-66 (8th Cir. 1991). This plaintiff's discomfort clearly is not that excruciating; else he would not have worked so many years in jobs that required him to spend a substantial amount of his workday reading. See Roth v. Lutheran General Hospital, 57 F.3d 1446, 1455 (7th Cir. 1995); Cooper v. Olin Corp., 246 F.3d 1083, 1088 (8th Cir. 2001).

But, argues the plaintiff, even if he has no case, the district court was wrong to grant the defendant judgment as a matter of law, because the defendant failed to renew its motion for judgment as a matter of law at the close of all the evidence, that is, after the defendant had put in its own evidence. The defendant had filed the motion at the close of the plaintiff's case and the judge had taken it under advisement. Only after the jury brought in a verdict for the plaintiff did the defendant renew the motion, and that was, of course, after, not at the close of, all the evidence.

Rule 50(b) of the Federal Rules of Civil Procedure implies (no stronger word is possible) that a motion for judgment as a matter of law must indeed be renewed at the close of all the evidence if the moving party wants to obtain such relief should the jury bring in a verdict against him. Noting that we had not in the past "applied this rule rigidly," Downs v. Volkswagen of America, Inc., 41 F.3d 1132, 1139-40 (7th Cir. 1994), held that renewing the motion at the close of all the evidence was indeed a prerequisite to obtaining a post-verdict judgment as a matter of law, even if there was no prejudice to the opposing party from failing to renew. See also Mathieu v. Gopher News Co., 273 F.3d 769, 776-77 (8th Cir. 2001). We based this conclusion on the recent decision of the civil-rules committee to "retain the requirement that a motion for judgment be made prior to the close of the trial, subject to renewal after a jury verdict has been rendered." Committee Note on 1991 Amendment to Fed. R. Civ. P. 50. But neither the rule nor the note discusses the consequences of failure to comply

strictly with the rule.

We repeated the holding of Downs in Umpleby v. Potter & Brumfield, Inc., 69 F.3d 209, 212 (7th Cir. 1995), and Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1364 (7th Cir. 1996). Most of the other circuits, even in their post-1991 decisions, have taken a more forgiving view of harmless violations of the renewal requirement. See Giles v. General Electric Co., 245 F.3d 474, 481–83 (5th Cir. 2001); Taylor Publishing Co. v. Jostens, Inc., 216 F.3d 465, 472-73 (5th Cir. 2000); Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 129 (2d Cir. 1999); Alcatel USA Inc. v. DGI Technologies, Inc., 166 F.3d 772, 781 (5th Cir. 1999); Singer v. Dungan, 45 F.3d 823, 829 (4th Cir. 1995); Keisling v. Ser-Jobs for Progress, Inc., 19 F.3d 755, 759 (1st Cir. 1994); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1173-74 (3d Cir. 1993); Riverview Investments, Inc. v. Ottawa Community Improvement Corp., 899 F.2d 474, 477-78 (6th Cir. 1990); Herrington v. County of Sonoma, 834 F.2d 1488, 1500 (9th Cir. 1987); Karns v. Emerson Electric Co., 817 F.2d 1452, 1456 (10th Cir. 1987); Ebker v. Tan Jay Int'l, Ltd., 739 F.2d 812, 824 & n. 14 (2d Cir. 1984) (Friendly, J.). The Eighth and (possibly) Eleventh Circuits are with us. Mathieu v. Gopher News Co., supra, 273 F.3d at 776-77; Redd v. City of Phenix City, 934 F.2d 1211, 1214 (11th Cir. 1991).

The reason for requiring renewal is that if a motion for judgment as a matter of law is made at the close of the plaintiff's case and denied and not renewed at the close of the defendant's case, the plaintiff may assume that the denial was the end of the matter, while if the defendant shows by renewing the motion that the denial was not the end of the matter, the plaintiff may ask and may receive permission from the judge to put on some additional evidence to show that there is a jury issue. This rationalecollapses when, as in this case but not in our previous cases, the judge takes the original motion under advisement; for then the plaintiff knows at the end of the trial that the question whether the defendant is entitled to judgment as a matter of law is a live one. There is no mousetrapping of the plaintiff in such a case; neither the

language of Rule 50(b) nor the committee note suggests that renewal of the motion is required in that circumstance; and requiring a party to file a motion before a previous identical motion has been ruled on is wasteful. The case law overwhelmingly denies that failure to renew in this circumstance is inexcusable. See, e.g., Taylor Publishing Co. v. Jostens, Inc., supra, 216 F.3d at 472-73; Singer v. Dungan, supra, 45 F.3d at 828-29; Lightning Lube, Inc. v. Witco Corp., supra, 4 F.3d at 1173-74; Ebker v. Tan Jay Int'l, Ltd., supra, 739 F.2d at 821-24; Borher v. Hanes Corp., 715 F.2d 213, 216-17 (5th Cir. 1983); see also 9 Moore's Federal Practice sec. 50.40[2] (3d ed. 1997). We called the Eleventh Circuit a "possible" outlier because, while it has strong language about interpreting the rule strictly ("we are presented with a particularly clear and mechanical rule of law; the City did not comply and the district judge may not waive [sic] his magic wand dismissing a procedural requirement as a technicality," Redd v. City of Phenix City, supra, 934 F.2d 1211, 1214), it has not had an occasion to decide whether there might be an exception for the case in which the motion filed before the case went to the jury was taken under advisement by the judge rather than denied immediately. To treat the failure to renew in those circumstances as inexcusable would ordain redundancy and create a trap for the unwary, of which the law contains a sufficient number as is to keep us entertained. We therefore do not interpret the Downs lines of cases to bar the grant of judgment in such a case.

Affirmed.