# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1298

_____

Dorman Hartley,

      Plaintiff - Appellee,

v.

Dillard's, Inc.,

      Defendant - Appellant.

Appeal from the United States
District Court for the
Eastern District of Arkansas.

_____

Submitted: September 12, 2002
Filed: November 18, 2002

_____

Before McMILLIAN, BRIGHT, and BOWMAN, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Dorman Hartley, a former employee, sued Dillard's, Inc., a department store chain, for age discrimination after his termination. A jury awarded Hartley back pay of $237,669.00. Based on a wilfulness finding by the jury, the district court[1] awarded Hartley front pay of $246,774.05, and attorney's fees and costs of $65,268.86. Dillard's then filed a motion for judgment as a matter of law, or in the alternative a new trial. The district court denied Dillard's motion. Dillard's brought this timely

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

appeal. Dillard's argues that the district court erred in denying the motion for judgment as a matter of law on the basis that the evidence was insufficient for the jury to decide discrimination, that on the alternative motion for a new trial the court erred in instructing the jury on motive, that the testimony of Hartley's economist expert should have been excluded, and that the calculation of back pay and front pay was incorrect. We affirm the judgment.

I.    BACKGROUND

Dillard's hired Hartley in 1987. In 1989, Dillard's promoted Hartley to the store manager position at its McCain Mall store in North Little Rock, Arkansas. Beginning in mid-1995, sales and profits at the McCain Mall Dillard's began declining. Hartley was unable to meet the annual sales and profit goals Dillard's had set for the McCain Mall store for fiscal years 1997, 1998, and the beginning of 1999.

In 1998, Dillard's experienced changes in upper level management. Dillard's promoted Tom Patterson to be the Little Rock district manager. Patterson served as Hartley's immediate supervisor. Dillard's also named Burt Squires as the new Corporate Vice President of Stores for the Arkansas Division.

Between July 1998 and June 1999, Hartley, Patterson, and Squires met several times to discuss the sales and profits of the McCain Mall store. As stated previously, sales and profits continued to decline during this period. In August 1999, Dillard's terminated Hartley, at age sixty-four, and replaced him with a thirty-two-year-old manager. Hartley then brought this action against Dillard's.

At trial, Dr. Charles Venus, Hartley's expert witness, testified that nationally malls were losing market shares to discount store chains and "big box" retail stores.[2] Hartley also presented the testimony of two former Dillard's employees. Aubra Carlton, an assistant store manager for Dillard's, and Dan Sparrow, a Dillard's district manager, testified concerning statements made by Corporate Vice President Squires that suggested age played a factor in the decision to terminate Hartley.

A jury found in favor of Hartley and determined that Dillard's acted willfully. With the finding of willfulness, the district court awarded Hartley front pay and attorney's fees. As we have observed, the district court denied the post trial motions and Dillard's brought this appeal.

## II. DISCUSSION

### A. Judgment as a Matter of Law

Dillard's contends that it was entitled to judgment as a matter of law on Hartley's age discrimination claim because he failed to prove that Dillard's stated reason for Hartley's firing was pretextual. We review the denial of a motion for judgment as a matter of law *de novo*, and draw all reasonable inferences in favor of the nonmoving party. Duncan v. Gen. Motors Corp., 300 F.3d 928, 933 (8th Cir. 2002). Judgment as a matter of law is proper "when all the evidence points in one direction and is susceptible to no reasonable interpretation supporting the jury verdict." Blackmon v. Pinkerton Sec. & Investigative Servs., 182 F.3d 629, 635 (8th Cir. 1999).

---

[2]"Big box" stores refers to free standing warehouse-retail chains, such as Wal-Mart, Target, and Home Depot, that offer a variety of services.

Dillard's argued it terminated Hartley for unsatisfactory job performance, including the decline of sales and profits at his store. However, Hartley introduced expert testimony that mall sales were declining nationally. He also presented testimony that other Dillard's stores had decreases in sales and profits and Dillard's did not terminate those store managers. Hartley offered evidence that two other Dillard's managers had poor performances and were not terminated, instead Dillard's transferred them to other stores. Finally, Hartley provided testimony from co-workers that indicated that Squires had age in mind when he terminated Hartley.

Hartley introduced sufficient evidence for the jury to conclude that Dillard's assertion of declining profits as the reason for discharge amounted to pretext and that his age caused his discharge. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). The district court did not err in denying Dillard's motion for judgment as a matter of law on the basis of all the evidence.

B.     Jury Instruction

We next address Dillard's contention that the district court erred when it instructed the jury on both mixed motive and pretext theories of discrimination. We review the jury instructions given by a district court for an abuse of discretion. See Brown v. Sandals Resorts Int'l, 284 F.3d 949, 953 (8th Cir. 2002). "Our review is limited to whether the jury instructions, taken as a whole, 'fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.'" Id. (quoting Ford v. GACS, Inc., 265 F.3d 670, 679 (8th Cir. 2001)). We will not reverse "unless we find that the error affected the substantial rights of the parties." Fogelbach v. Wal-Mart Stores, Inc., 270 F.3d 696, 699 (8th Cir. 2001).

The framework for evaluating an age discrimination claim depends on the type of evidence presented in support of the claim. Where the plaintiff relies primarily on circumstantial evidence, courts apply an analysis as set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under <u>McDonnell Douglas</u>, after establishing a prima facie case, the plaintiff must prove by the preponderance of the evidence that the nondiscriminatory reasons offered by the employer were pretext for discrimination. <u>See</u> <u>Smith v. Allen Health Sys., Inc.</u>, 302 F.3d 827, 833 (8th Cir. 2002).

However, when a plaintiff can produce direct evidence that an illegal criterion was a motivating factor in the employment decision, the court uses the framework as set out in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989). The mixed motive framework allows for declaratory relief, injunctive relief, attorney's fees and costs once the plaintiff meets his initial burden regarding direct evidence. <u>Gagnon v. Sprint Corp.</u>, 284 F.3d 839, 847-48 (8th Cir. 2002). Thus, the employer is liable for discrimination upon direct evidence that it acted on the basis of a discriminatory motive. <u>Id.</u> Whether or not the employer satisfies its burden to show by a preponderance that it would have reached the same employment decision absent any discrimination is only relevant to determine whether the court may award full relief including damages, court ordered admissions, reinstatement, hiring, promotion or other such relief. <u>Id.</u>

In this case, the district court instructed the jury on both mixed motive and pretext theories using the special interrogatories as set forth in the Eighth Circuit's Civil Model Jury Instruction 5.92. This jury instruction was designed for use when a case cannot easily be classified as either a mixed motive case or a pretext case. The instruction is intended to elicit the jury's categorization of the case at issue. The committee comments to the instruction provide:

These special interrogatories are designed for use where the trial court is inclined to adhere to a mixed motive/pretext distinction but cannot readily classify a case under a "mixed motive" or "pretext" theory. For example, if plaintiff presents some direct evidence which does not clearly address the employment decision at issue, such as general statements of age bias by the employer, it may be unclear whether the case should be submitted under a "mixed motive" or "pretext" instruction.

EIGHTH CIR. MODEL JURY INSTR. § 5.92 cmt. (2001).

Dillard's argues that the use of this instruction was improper because there was no direct evidence of discrimination to entitle Hartley to a mixed motive instruction. Hartley presented the testimony of Dillard's operations manager, Aubra Carlton. Carlton testified that Squires directed her to "go out and hire some young guys" at a job fair. In addition, Hartley offered the testimony of Dan Sparrow, another store manager, who described another age-related situation. Sparrow testified that Squires asked him to remove two older women from their manager positions with Dillard's. Not only did Hartley offer some direct evidence of discrimination, he also offered circumstantial evidence on how he was treated differently in regard to profits at the store compared with other store managers. After careful review of the record, we agree that the evidence could reasonably be characterized to support a mixed motive theory of discrimination.

Dillard's also contends that the pretext portion of the instruction misstated this court's standard for finding pretext by requiring that the jury find that age was "a" determining factor rather than "the" determining factor. We have previously approved of instructions stating "the" determining factor as the correct standard. See Rockwood Bank v. Gaia, 170 F.3d 833, 842 (8th Cir. 1999) ("the plaintiff must prove that the prohibited factor was the determining factor, not merely a determining factor, in the adverse employment decision"); Foster v. Univ. of Ark., 938 F.2d 111, 115 (8th

Cir. 1991) (deciding that "the" determining factor not "a" determining factor correct standard in racial discrimination case under pretext theory).

However, we have also approved of the "a" determining factor standard. See Calder v. TCI Cablevision of Mo., Inc., 298 F.3d 723, 729 (8th Cir. 2002) ("Calder must then present evidence sufficient . . . to create a reasonable inference that age was *a* determinative factor" (emphasis added)); Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000) ("Fisher must then present evidence sufficient to raise a question of material fact as to whether Pharmacia's proffered reason was pretextual and to create a reasonable inference that age was a determinative factor in the adverse employment decision."); Erickson v. Farmland Indus., Inc., 271 F.3d 718, 726 (8th Cir. 2001) ("Erickson must present sufficient evidence to . . . create a reasonable inference that age was a determinative factor."). Taking the jury instructions as a whole, they adequately represent the law in this case. See Brown, 284 F.3d at 953 (stating no grounds for reversing where jury instructions adequately represented the law). Any error in using "a" instead of "the" determinative factor did not constitute harmful error when the jury relied on the McDonnell Douglas formulation to find discrimination.[3]

C.    Admission of Expert Testimony

Dillard's next contends a new trial should be granted because the expert opinion of Dr. Venus, an economist, was not based on sufficient facts and data, scientific principles, and reliable methods. Dr. Venus testified on the computation of damages and the economics of employability and external factors affecting mall and retail store sales. Hartley presented Dr. Venus' testimony to support his position

---

[3]Even if the evidence did not support a mixed motive theory, the instruction did not substantially affect Dillard's rights. See Fogelbach, 270 F.3d at 699. The jury did not answer the interrogatory for mixed motive because it had already found for Hartley on the pretext theory.

that Dillard's used declining profits to justify Hartley's termination. Dr. Venus testified that the financial problems of the McCain Mall store were consistent with what was happening to department stores in malls around the country.

Expert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue. Fed. R. Evid. 702; see also Miles v. Gen. Motors Corp., 262 F.3d 720, 724 (8th Cir. 2001). We review the admission of expert testimony for the abuse of discretion. See In re Air Crash at Little Rock Ark., on June 1, 1999, 291 F.3d 503, 509 (8th Cir. 2002).

Dillard's contends that Dr. Venus' testimony is not based on sufficient facts or data because some of the materials that he relied on do not squarely support his testimony. Dillard's also argues that Dr. Venus failed to consider the economic realities specifically applicable to the McCain Mall store. Under Federal Rule of Evidence 702, a trial judge, in admitting expert testimony, has a gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993), and applying Daubert to the testimony of engineers and other experts).

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Bonner v. ISP Tech., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 964 (8th Cir. 1996) (internal citations and quotations omitted)).

Dr. Venus has performed similar economic comparisons for more than fifteen years, including other analyses of retail establishments. His testimony explained the

general trend of mall stores losing market share to non-mall competitors, and this would explain the general loss of profits at the McCain Mall store. While Dr. Venus' testimony may not have addressed the specific financial conditions of the McCain Mall store, the jury could consider this evidence on the profit questions relating to the discharge. We conclude that the district court did not abuse its discretion under Kumho Tire in admitting Dr. Venus' testimony.

### D.    Calculation of Back Pay

Dillard's presents two issues for error in Hartley's back pay award. First, Dillard's argues that Hartley's back pay should be reduced because he failed to mitigate his damages by seeking other employment after his termination. Second, Dillard's contends that the district court erred in failing to deduct certain amounts from the jury's award of back pay.

#### 1.    Mitigation

A party harmed by discriminatory employment decisions has an affirmative duty to mitigate his damages by reasonably seeking and accepting other substantially equivalent employment. See Mathieu v. Gopher News Co., 273 F.3d 769, 783-84 (8th Cir. 2001). The employee need not go into another line of work, accept a demotion, or take a demeaning position. Id. at 784. A plaintiff's efforts to mitigate need not be successful but must represent an honest effort to find substantially equivalent work. Id. We review the district court's finding that a plaintiff used reasonable efforts to mitigate for clear error. See Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1106 (8th Cir. 1996).

The burden remains on the employer to show that the employee failed to mitigate his damages. See Brown v. Stites Concrete, Inc., 994 F.2d 553, 565 (8th Cir. 1993). Dillard's attempts to explain away its burden of proving the availability of

substantially equivalent employment by arguing that Hartley forfeited his right to claim damages because he did not seek employment after November 2000.

However, the district court determined that Hartley "has made a reasonable attempt to mitigate his damages." (App. at 65.) Further, the district court explained:

> I am persuaded by Dr. Venus' testimony that it is difficult for a person with [Hartley's] skills to find a comparable job when he is so close to retirement age. Defendant bears the burden of showing that there were suitable positions and that Plaintiff failed to use reasonable care in seeking them. Defendant failed to do so.

(App. at 65.) Based on our review of the record, the district court's characterization of Hartley's mitigation does not amount to clear error.

### 2. Back Pay Deductions

We next address Dillard's contention that the district court erred in failing to reduce certain amounts from Hartley's back pay award. We review a district court's award of back pay for clear error as to factual findings. See Glover v. McDonnell Douglas Corp., 150 F.3d 908, 910 (8th Cir. 1998).

A district court is obligated to grant a plaintiff who has been discriminated against on account of his age, the most complete relief possible. See Maschka v. Genuine Parts Co., 122 F.3d 566, 572 (8th Cir. 1997). Back pay in an age discrimination case is the difference between the value of the compensation the plaintiff would have been entitled to had he remained employed by the defendant and whatever wages he earned during the relevant period. See Brennan v. Ace Hardware Corp., 495 F.2d 368, 373 (8th Cir. 1974).

-10-

Dillard's challenges the inclusion of payments for health, life and other forms of insurance, contributions to Hartley's retirement plan, accrued vacation, and the value of Hartley's employee discount. We have held that on proper foundation, an employee may recover benefits other than lost wages such as lost 401(k) contributions, and the replacement of life and disability insurance that had been paid by the employer. See Gaworski v. ITT Commercial Fin. Corp., 17 F.3d 1104, 1114 (8th Cir. 1994). Further, other courts have allowed the recovery of various fringe benefits of employment such as vacation time, employee meal discounts, health insurance coverage, lost stock options, and travel expenses. See Munoz v. Oceanside Resorts, Inc., 223 F.3d 1340, 1348 (11th Cir. 2000) (upholding back pay award that included vacation time, employee meal discounts, and health insurance coverage); see also Greene v. Safeway Stores, Inc., 210 F.3d 1237, 1243 (10th Cir. 2000) (allowing for recovery of lost stock options that would have vested, but for the illegal termination); Brunnemann v. Terra Int'l, Inc., 975 F.2d 175, 178 n.6 (5th Cir. 1992) (allowing former employee to recover $750 a month in lost travel expenses the employee was entitled to while working); Kelly v. Matlack, Inc., 903 F.2d 978, 984-85 (3d Cir. 1990) (allowing for the recovery of vacation, sick leave/funeral leave, short and long term disability, tuition aid program, medical benefits, and pension plan contributions, where employee handbook noted these among the "invisible paycheck" that the employee receives as a benefit of employment). Based on our review, the district court did not clearly err in refusing to deduct the specific amounts contested by Dillard's from Hartley's back pay award.

E.    Front Pay Award

Finally, Dillard's claims that the district court erred in awarding front pay to Hartley and in its calculation. We review the award of front pay for the abuse of discretion. See Mathieu, 273 F.3d at 779.

First, Dillard's argues the district court erred in awarding front pay until Hartley reached age sixty-eight. Dillard's contends Hartley's front pay award should be limited because he failed to continue looking for work prior to trial. At trial, Hartley testified he had planned to work for Dillard's until age sixty-eight. He provided expert testimony that given his education, age, and employment, it was unlikely he would ever achieve the level of income and benefits he enjoyed in his prior position. We have affirmed a front pay award for the remainder of the plaintiff's working life, where he had been employed by the defendant for twenty-three years. See Newhouse v. McCormick & Co., 110 F.3d 635, 641-42 (8th Cir. 1997) ("If a plaintiff is close to retirement, front pay may be the only practical approach."). Hartley also provided evidence that his attempts to mitigate damages had failed. Viewing the record in this case as a whole, the district court did not abuse its discretion by ordering front pay.

Dillard's also asserts that the district court erred in calculating Hartley's front pay award by including the recovery of benefits such as COBRA payments,[4] vacation pay, and employer contributions towards benefits. Front pay is a monetary substitute to reinstatement, which the district court in its discretion may award under the Age Discrimination in Employment Act to make the injured party whole. See Newhouse, 110 F.3d at 641. The front pay award should address the equitable needs of the employee, such as the ability to obtain employment with comparable compensation. See E.E.O.C. v. HBE Corp., 135 F.3d 543, 555 (8th Cir. 1998). The front pay determination is left to the district court's discretion. See Salitros v. Chrysler Corp., ___ F.3d ___, 2002 WL 31190839, *7 (8th Cir. Oct. 3, 2002). Because the purpose of awarding front pay is to compensate the plaintiff for what he would have had but for his wrongful termination, the district court did not err in refusing to reduce Hartley's award for vacation pay and employer contributions. See Belk v. City of

---

[4]The Consolidated Omnibus Budget Reconciliation Act (COBRA) contains provisions giving certain former employees the right to temporary continuation of health coverage for themselves and their families at group rates.

Eldon, 228 F.3d 872, 883 (8th Cir. 2000) (upholding denial of front pay reduction for farming income that employee would have had in any case).

III.   CONCLUSION

We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.