# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1178

_____

| | | |
|---|---|---|
| Jerry Ross, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Garner Printing Company, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 15, 2001

Filed: April 16, 2002

_____

Before LOKEN, HEANEY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Jerry Ross (Ross) sued his former employer, Garner Printing Company (Garner Printing), for retaliation and breach of contract and won a $250,000 jury verdict on his breach of contract claim. The district court[1] denied Garner Printing's motion for a new trial. Garner Printing now appeals, arguing that the district court erred in instructing the jury, in excluding evidence that Ross tried to bribe a witness, and in communicating with the jury during deliberations. We affirm.

_____

[1] The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

## I.    BACKGROUND

Ross was a long-time employee of Garner Printing in Des Moines, Iowa. He started as a pressman in 1961 and worked his way up to production manager. In 1978, along with several of his co-workers, Ross became a part owner of Garner Printing. In July 1996, when Garner Printing was sold to Consolidated Graphics Inc., Ross sold his stake in the company but remained to work as a production manager.

In conjunction with the sale in 1996, Ross negotiated a five-year employment agreement with Garner Printing which provided that he could only be terminated for cause. If Ross were terminated for reasons other than cause, the employment agreement entitled him "to payment of all compensation remaining under the terms of employment under this Agreement payable monthly as though still employed." As part of the agreement, Ross agreed not to compete with Garner Printing for approximately five and a half years after the sale.

In July 1998, Ross was fired by Garner Printing. In February 1999, Ross filed this lawsuit, alleging that he was fired in retaliation for reporting that a female co-worker was being sexually harassed and that he was fired without cause in violation of his written employment contract. The district court held a trial on Ross's claims in October 2000.

At trial, Ross offered evidence that Garner Printing fired him for reporting the sexual harassment of a co-worker and that Garner Printing did not have cause to dismiss him. Ross also testified that, after he was fired, he spent six months sending resumes to out-of-state printers, but did not find work. Garner Printing offered evidence of "a great demand for printing executives" nationally, but no evidence of specific jobs that would have been available to Ross.

Garner Printing also defended its decision to fire Ross, arguing that Ross provided cause for the dismissal by disparaging its executives and encouraging other employees to leave Garner Printing and work for rival printers. While Garner Printing had some evidence of misconduct prior to firing Ross, its strongest evidence was gathered after Ross had been fired. During an investigation of Ross's claim that a co-worker was being sexually harassed, Garner Printing allegedly learned that Ross had been actively diverting business to other printers. It also received information from Tim Nevins (Nevins), another employee, who said that Ross once took a confidential document from the company president's desk and provided it to him for use by the labor union. Nevins testified that he destroyed the document without showing it to anyone.

The trial began on Thursday, October 12, 2000. At the end of the day on Friday, October 13, during Ross's case-in-chief, Garner Printing's lawyer asked Ross if he had offered Nevins $20,000 to take a vacation during the trial. Ross denied the suggestion and moved to exclude any evidence of the alleged incident. The district court granted the motion, pending an offer of proof by Garner Printing. The offer of proof was made on Thursday, October 19. According to the offer of proof, Ross offered Nevins the bribe in February 2000, but Nevins did not tell anyone about it until the Monday before trial. The district court found the evidence had unfairly surprised Ross and excluded it from the trial.

At a conference with counsel after the close of all the evidence, the trial judge informed counsel that he would give the following jury instruction on Ross's breach of contract claim:

> To recover from Garner Printing for breach of contract, plaintiff must prove all of the following propositions:
>
> i. Garner Printing breached the contract.
> ii. The breach of the contract caused plaintiff to sustain damages.

iii. The amount of the damage.

If plaintiff has failed to prove any of these propositions, he is not entitled to damages on this theory of recovery. If plaintiff has proved all of these propositions, plaintiff is entitled to damages in some amount on this claim of contract breach.

The district court's general damages instruction, which was also discussed at the instruction conference, told the jurors that Ross did not have any duty to mitigate damages on his breach of contract claim. The trial judge also informed counsel that he would not give any instruction on the significance of evidence of misconduct Garner Printing discovered after it fired Ross.

Counsel for Garner Printing raised several objections to the court's proposed instructions, including the following three objections. First, counsel objected to the lack of a specific instruction on after-acquired evidence of misconduct. Second, counsel objected to the lack of an instruction informing the jury that Ross had to perform his obligations under the contract. Third, counsel objected to the court's failure to instruct the jury that Ross had a duty to mitigate damages on his breach of contract claim. Garner Printing proposed specific instructions, in writing, on all of these issues. The trial judge overruled Garner Printing's objections, but said he would allow counsel to use after-acquired evidence in his closing argument. Garner Printing did not renew its objections at any time after the judge instructed the jury.

The jury retired to deliberate in the afternoon of Thursday, October 19. On Friday, the jury submitted several written questions to the district court. The jury's first question concerned the court's general damages instruction. The district court proposed a written answer to the jury's question on damages. Neither party objected to the court's proposed response, but Garner Printing requested a supplemental instruction on after-acquired evidence of misconduct. The court declined to give such a supplemental instruction and gave the jury its answer.

At 3:15 p.m. on Friday, the jury submitted two more written questions to the district court:

> When the first breach by either party occurs in this contract, does that mean that the contract can no longer be used for legal reasons?
>
> Ref: Employment & Non Competition Agreement
>
> If and when a contract is broken is it null and void?

At 3:45 p.m., after conferring with counsel for both parties, the district court answered the jury's second round of questions. The court informed the jurors, in writing, they "should consider the circumstances and nature of any 'first breach' of a contract" and "[w]hether a contract is null and void after a party has breached the contract depends on the circumstances and nature of the breach." Neither party objected to the district court's response.

At approximately 4:05 p.m., the jury wrote the following note to the district court:

> At what point do we determine an adequate conclusion can't be met?
>
> We have agreed on 2 of 3 points but have problem [sic] on the last issue.
>
> We have one person who would be a hardship [sic] to come back another day.

After conferring with counsel, the district judge brought the jurors into the courtroom and asked which juror had the hardship. Three jurors said that they would have problems returning on Monday morning. The judge then told the jurors to return to their deliberations while he discussed the matter with counsel.

After discussing the issue with counsel, the judge sent the jury a written note reading, "At 4:55 p.m., if you have not returned verdicts on all issues, I will call you into the courtroom and visit further with you." The jury was called into the courtroom at 4:55 p.m., where the foreperson informed the court that the jury had resolved question one (discrimination) and question six (breach of contract), but not question seven (damages for breach of contract).[2] The judge again sent the jurors out of the courtroom. A little while later, he called them back to say that they would continue their deliberations on Monday morning. At that point, the jurors asked to have ten more minutes to return a verdict.

The judge granted their request, and, at 5:30 p.m., the jury returned with a verdict for Garner Printing on Ross's retaliation claim and a $250,000 verdict against Garner Printing on Ross's breach of contract claim. Garner Printing filed a motion for new trial, which the district court denied.

On appeal, Garner Printing raises five arguments in support of a new trial. Garner Printing's first three arguments concern the jury instructions. Garner Printing claims that the district court erred (1) in failing to instruct the jury on the significance of "after-acquired" evidence of misconduct by Ross, (2) in failing to instruct the jury that performance under the contract by Ross was an essential element of his breach of contract claim, and (3) in instructing the jury that Ross did not have to mitigate damages with respect to his breach of contract claim. Garner Printing also claims that the district court erred in excluding the evidence of Ross's alleged attempted bribe and in the court's communications with the jury.

---

[2] The jury did not answer questions two through five, which were special interrogatories concerning Ross's failed claim of retaliation.

## II. DISCUSSION

A district court's denial of a motion for new trial is reviewed for abuse of discretion. Phillips v. Collings, 256 F.3d 843, 851 (8th Cir. 2001).

### A. Instructional Issues

A trial court has substantial discretion in drafting jury instructions. Appellate review of a district court's jury instructions "is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Omega Healthcare Investors, Inc. v. Lantis Enters., Inc., 256 F.3d 774, 776 (8th Cir. 2001) (quoting Oriental Trading Co. v. Firetti, 236 F.3d 938, 946-47 (8th Cir. 2001)). Even an erroneous jury instruction does not warrant reversal, unless it affected the substantial rights of the parties. Martin v. Wal-Mart Stores, Inc., 183 F.3d 770, 773 (8th Cir. 1999).

We consider Garner Printing's arguments on the jury instructions even though Garner Printing did not properly object to those instructions. Rule 51 of the Federal Rules of Civil Procedure requires a party to object to the court's instructions after the instructions are read to the jury, but before the jury retires to deliberate. See Barton v. Columbia Mut. Cas. Ins. Co., 930 F.2d 1337, 1341 (8th Cir. 1991); 9 Moore's Federal Practice, § 51.12[1][b] (3d ed. 2001). Garner Printing did not renew its objections immediately after the jury had been instructed. Nevertheless, it submitted proposed instructions in writing and raised its objections during a conference at the close of the evidence. After reviewing the record, we are convinced that the district court understood that Garner Printing intended to preserve its objections for appeal, despite Garner Printing's failure to comply with Rule 51, and so we address the merits of those objections. See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 711-12 (8th Cir. 2001); Meitz v. Garrison, 413 F.2d 895, 899 (8th Cir. 1969).

## 1. **After-acquired evidence**.

The district court arguably erred in overruling Garner Printing's request for an instruction on after-acquired evidence of misconduct by Ross. "A party is entitled to an instruction reflecting that party's theory of the case if the instruction is legally correct and there is evidence to support it." Gray v. Bicknell, 86 F.3d 1472, 1485 (8th Cir. 1996). Garner Printing asked the court to instruct the jury that when an employee gives cause for his dismissal, the employer is not liable for breach of contract, even if the employer did not discover the relevant misconduct until after it fired the employee. This is the law in many jurisdictions, see O'Day v. McDonnell Douglas Helicopter Co., 959 P.2d 792, 795-96 (Ariz. 1998); Restatement (Second) of Contracts, § 237, cmt. c, illus. 8 (1979), and the parties apparently agree that the rule applies under Iowa law.[3] There was also evidence to support the instruction. Garner Printing's investigation after Ross was fired revealed evidence Ross had been diverting business to rival printers and had attempted to provide a confidential management document to the company's labor union. The jury could have found this conduct justified Ross's dismissal.

---

[3] In his brief, Ross states that "[t]here is no question that *evidence* of breach or cause discovered or acquired at any time is relevant to prove cause." Although Ross's employment agreement provided that it was governed by Texas law, both parties treated Ross's claims as though they were governed by Iowa law. The Iowa Supreme Court has not expressly adopted the after-acquired evidence doctrine as outlined in the Restatement (Second) of Contracts, but it has adopted a variant of the doctrine for use in the context of employment discrimination. See Walters v. United States Gypsum Co., 537 N.W.2d 708, 709-11 (Iowa 1995) (citing McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 360-61 (1995)). Similarly, the Texas Supreme Court has held, in a retaliatory discharge case, that after-acquired evidence of misconduct that is by itself sufficient to warrant termination "bars reinstatement and recovery of actual damages for the period after the employer discovered the grounds for termination." Trico Tech. Corp. v. Montiel, 949 S.W.2d 308, 312 (Tex. 1997).

However, the jury could just as easily have reached the same conclusion under the instructions that were actually given. As Ross points out, Garner Printing was free to argue, and the jury was free to consider, after-acquired evidence of misconduct. There is no indication that the jury failed to consider the after-acquired evidence.[4] More importantly, as we discuss below, Garner Printing had the benefit of an instruction that, in contrast to its own proposed instructions and the governing law, incorrectly placed the burden of proof solely on Ross. Thus, Garner Printing had the benefit of using Ross's alleged misconduct without the burden of proving its affirmative defense that Ross's dismissal was justified. Under these circumstances, we find no prejudice to Garner Printing's substantial rights.

### 2.     Ross's duty of performance.

Garner Printing argues that Ross should have been given the burden of proving his dismissal was without cause. Ordinarily, a plaintiff claiming a breach of contract bears the burden of proving that he performed his obligations under the contract. See Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 224 (Iowa 1998). However, in a case arising under a "for cause" employment contract, it is generally held that the employer has the burden of proving cause for termination. See W. Distrib. Co. v. Diodosio, 841 P.2d 1053, 1059 (Colo. 1992).

The Iowa Supreme Court has implicitly endorsed this approach. In Wolfe v. Graether, 389 N.W.2d 643 (Iowa 1986), the court wrote that, under an employment contract for a fixed period of time, "the employer may not discharge an employee prior to the stated time unless cause is shown based upon the employee's failure to perform in accordance with the contract of hire or there is some reason for discharge expressly provided in the contract." Id. at 652 (citing Allen v. Highway Equip. Co., 239 N.W.2d 135, 140 (Iowa 1976)). The Iowa Supreme Court's formulation, which

---

[4] The jury's questions to the court, which concerned damages, did not involve Garner Printing's liability on the breach of contract claim.

requires a showing of employee misconduct, suggests the burden of proving misconduct rests with the employer and the employee does not have the burden of showing his conduct was unobjectionable. Cf. Diodosio, 841 P.2d at 1059 n.3 (holding that plaintiff-employees "had no burden to prove that their discharge was without cause because 'discharge without cause' is merely the converse of 'good cause for discharge' which . . . is an affirmative defense to a claim for breach of an employment contract").

The Iowa Civil Jury Instructions reflect the burden-shifting approach the supreme court implicitly adopted in Wolfe. On a claim under a contract of employment for a definite time, the relevant pattern jury instruction does not require the employee to prove he performed his obligations under the contract. See Iowa Civil Jury Instruction 3110.1. Instead, the pattern instruction allows the employer to assert an affirmative defense, which presumably includes the defense that the employee gave good cause for his dismissal. See id. Of course, the defendant employer has the burden of proving its affirmative defense. See Gaston v. Finch, 72 N.W.2d 507, 510 (Iowa 1955).

In this case, the issues of Ross's performance under the contract were identical to whether Garner Printing had cause to fire him. The shortcomings in performance that Garner Printing attributes to Ross – "flagrant neglect of work and gross misconduct" – are the same types of alleged misconduct Garner Printing should have had the burden of proving to a jury. Ross did not have the burden of proof on these issues, and the district court did not err in refusing to tell the jury he did.

### 3. **Mitigation of damages**.

We find no reversible error in the district court's instruction that Ross had no duty to mitigate damages on his breach of contract claim. Depending on the jurisdiction, a plaintiff is not ordinarily required to mitigate liquidated damages. See Musman v. Modern Deb, Inc., 377 N.Y.S.2d 17, 19 (N.Y. App. Div. 1975). Under

Ross's employment contract, termination without cause entitled him "to payment of all compensation remaining under the terms of employment under this Agreement payable monthly as though still employed." The district court construed this provision as a liquidated damages clause and relied on the clause in refusing to require mitigation of damages. Garner Printing has not advanced any argument in relation to liquidated damages clauses. For example, it does not claim that Iowa requires mitigation of damages under such clauses or that awarding damages under this clause would impose a penalty. See Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1291-92 (7th Cir. 1985). We find that Garner Printing has waived any legal arguments that might have merit with respect to this instruction.

Even if we were to find error in the district court's damages instruction, there is no indication that it prejudiced Garner Printing. The damages awarded by the jury were less than those provided for in the employment contract and closely resemble what Ross would have earned during the period of time he was contractually obligated not to compete with Garner Printing. Because it appears that the jury did reduce Ross's damages, we cannot find that Garner Printing's substantial rights were prejudiced by the failure to give an instruction requiring mitigation.

### B.    Evidence of the Attempted Bribe

A "district court has broad discretion to exclude evidence not disclosed in compliance with its pretrial orders." Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 889 (8th Cir. 1998). The district court excluded Nevins's testimony about Ross's alleged attempt to bribe him on the grounds of unfair surprise, stating that the "information should have been disclosed as soon as [defense counsel] knew about it."

Garner Printing's attempt to use Nevins's testimony about the attempted bribe was not in accordance with the district court's final pretrial order. A pretrial order "measures the dimensions of a lawsuit," and "a party may not offer evidence or advance theories during trial which violate the terms of a pretrial order." Anderson

v. Genuine Parts Co., Inc., 128 F.3d 1267, 1271 (8th Cir. 1997) (internal citations omitted).  The pretrial order entered by the district court covered the subject matter of witness testimony.  In particular, it included a summary of Nevins's testimony which said nothing about Ross attempting to bribe Nevins.

Garner Printing purportedly did not learn about Nevins's account of the attempted bribe until after the pretrial order was entered.  However, at the point Nevins disclosed his allegation, Garner Printing should have moved to modify the pretrial order.  See Fed. R. Civ. P. 16(e).  Instead, it kept the new testimony secret and waited until a crucial moment, the cross-examination of Ross, to drop its bombshell.  Under these circumstances, the district court did not abuse its discretion in excluding the evidence on the grounds of unfair surprise.

### C.    Communications With the Jury

Garner Printing argues that the district court's communications with the jurors coerced them into awarding an excessive amount of damages.  See Williams v. Fermenta Animal Health Co., 984 F.2d 261, 263-64 (8th Cir. 1993).  Garner Printing theorizes that the district court coerced the jurors into the award of damages by telling them they would have to return to deliberate on Monday morning.

Garner Printing's failure to object in a timely manner to the district court's communications with the jury "indicates that the potential for coercion argued now was not apparent to one on the spot." United States v. Hiland, 909 F.2d 1114, 1137-38 (8th Cir. 1990).  Even in hindsight, it is difficult to say with any sense of certainty that the court's communications coerced the jury into reaching a verdict.  There is no indication that the judge directed his statements at holdout jurors, and the award of $250,000 was reasonable.  Considering these circumstances, we find the jurors were not coerced by the district court's communications with them.

## III.   CONCLUSION

The district court's jury instructions, although erroneous, did not prejudice Garner Printing's substantial rights, and the district court acted within its discretion in excluding Tim Nevins's testimony about the attempted bribe and in communicating with the jury.  Accordingly, we affirm the judgment of the district court.


A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.