# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3775EM

_____

| | | |
|---|---|---|
| Brotherhood of Maintenance of Way Employees, and Wabash Federation, | * * * | |
| Appellants, | * | |
| | * | On Appeal from the United |
| | * | States District Court |
| v. | * | for the Eastern District |
| | * | of Missouri. |
| | * | |
| Terminal Railroad Association of St. Louis, | * * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 12, 2002
Filed: October 15, 2002

_____

Before BYE, RICHARD S. ARNOLD, and BEAM, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

The Brotherhood of Maintenance of Way Employees (the union) moved the District Court to enforce an arbitration award made in its favor by Public Law Board No. 6086, a panel of arbitrators convened under the Railway Labor Act. The District Court declined to do so and instead granted summary judgment in favor of the union's opponent, the Terminal Railroad Association of St. Louis (the railroad). The

District Court held that the neutral member of the Public Law Board caused the Board to exceed the scope of its jurisdiction, as defined by the parties' arbitration agreement, by allowing the union to submit written arguments. We hold that the neutral member was authorized to interpret the agreement to determine whether the union's additional submission was permissible, and we cannot say that his ruling was so far wrong as to require the courts to overturn the ruling of the Public Law Board. Therefore, we reverse the District Court's ruling in favor of the railroad and reinstate the arbitration award for the union made by the Public Law Board.

## I.

The union and the railroad, parties to a collective bargaining agreement, had a dispute pending before the National Railroad Adjustment Board (NRAB). That dispute was governed by the Railway Labor Act, 45 U.S.C. § 151 et seq.

Because a significant amount of time passed without the case being resolved, the union exercised its right pursuant to the Act to have the National Mediation Board (NMB) appoint a Public Law Board to adjudicate the dispute. The parties entered into an arbitration agreement that provided that they would transfer the case file, as it existed before the NRAB, to the Public Law Board "with no alterations of any kind." They further agreed that "[n]o material could be added to or deleted from the files as they now stand." App. I, Tab 8, Tab A.1 at 3.

The parties memorialized this agreement in a memorandum:

> The Board shall hold hearings on each claim or grievance submitted to it. Due notice of such hearing shall be given the parties. At such hearings, the parties may be heard in person, by counsel or by other representatives as they may elect. The parties may present orally, statements of facts, supporting evidence and data, and argument of their

position with regard to each case being considered by the Board. Oral presentation shall be confined to the material contained in the written record before the board.

The parties will comport to NRAB Circular No. 1 instructions. The Neutral Member of the Board shall have the authority to require the production of such additional evidence, either oral or written, as he or she may desire from either party.

App. I, Tab 8, Tab A.1 at 6.

There were to be three arbitrators on the Public Law Board: one appointed by the union, one by the railroad, and the last to be appointed by the NMB. This final arbitrator is often called the "neutral arbitrator." The members appointed by the parties are theoretically arbitrators, but they advocate the position of the party that appointed them and virtually always cast their votes for their own sides, so that the neutral arbitrator ultimately decides the dispute.

On June 23, 1999, at the first of two hearings, the arbitrators appointed by each side made oral presentations to the neutral arbitrator on the panel, Dana Eischen. During those proceedings the union's appointed arbitrator, Roy Robinson, presented a document summarizing the union's position to Mr. Eischen and the railroad's appointed arbitrator, Richard Finley. The document contained no new evidence; it merely reorganized the union's legal arguments and cited new cases. Mr. Finley, acting on behalf of the railroad, objected to admitting the document on the grounds that it was new material barred by the parties' arbitration agreement. Mr. Eischen accepted the document anyway.

On September 1, 1999, the parties, acting through their Public Law Board members, again met to argue their cases in front of Mr. Eischen. Again, Mr. Robinson presented a written summary of the union's position to the other two

arbitrators, and again Mr. Eischen accepted the material over Mr. Finley's objections. At no point did Mr. Finley offer his own written summary of the railroad's position to Mr. Eischen, though he could have. Four months later, Mr. Robinson sent a letter to Mr. Eischen offering additional NRAB decisions that the union felt were relevant to the present dispute. Mr. Finley objected to this document as well.

The Board found for the union on nine of the fourteen claims. The railroad refused to satisfy the award, and the union asked the District Court to enforce the Public Law Board's decision. The District Court found in favor of the railroad and set aside the awards on the ground that the Board had exceeded the jurisdiction given it by the arbitration agreement when it allowed the union to submit what the Court thought was "new material." The union then appealed to this Court.

II.

While we review a district court's grant of summary judgment de novo, see Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1196 (8th Cir. 2002), our scope of review of the arbitration award itself is among the narrowest known to the law. See Schiltz v. Burlington Northern R.R., 115 F.3d 1407, 1414 (8th Cir. 1997).

The principal argument for setting aside the arbitration award is the alleged failure of the Board to confine itself to matters within the scope of its jurisdiction. See Brotherhood of Locomotive Eng'rs Int'l Union v. Union Pacific R.R., 134 F.3d 1325, 1330 (8th Cir. 1998). The jurisdiction of the arbitrator is determined by the arbitration agreement. Armstrong Lodge No. 762 v. Union Pacific R.R., 783 F.2d 131, 135 (8th Cir. 1986). An award should be vacated if the arbitrator ignores the plain language of the agreement and exceeds his jurisdiction. See Northwest Airlines, Inc. v. IAM, Dist. Lodge 143, 894 F.2d 998, 1000 (8th Cir. 1990). But the arbitrator has the power to interpret ambiguous language in contract provisions. Id.

In this case, the neutral arbitrator could have reasonably concluded that the agreement was ambiguous as to whether he could accept the written materials proffered to him. While the agreement clearly stated that "no material could be added to or deleted from the files as they now stand [before the NRAB]," it failed to define these terms. The addition of new facts not in the file would certainly be prohibited. It is not so obvious that a written summary of legal arguments, which could have been read aloud at the hearing with no grounds for objection,[1] is "new material." Neither is it clear that a letter merely containing recent legal precedent relevant to the questions before the Board is "new material" added to the "file" as these terms are used in NRAB arbitration.

Additionally, the agreement allowed the neutral arbitrator to "require" additional material, either written or oral, from either party. The agreement also incorporated by reference NRAB Circular No. 1, which provides rules for making ex parte submissions to the neutral arbitrator. It is understandable that Mr. Eischen, the neutral arbitrator, could have concluded that the written materials were not new additions to the file, since they merely summarized the union's legal positions and did not alter the factual context of the dispute.

Having established that the status of the memoranda presented to the arbitrator was an issue not clearly determined by the agreement, we note that the decision was made while resolving the merits of the dispute, and so the neutral arbitrator's decision is classified as "procedural." See Wyandot, Inc. v. Local 227, United Food and Commercial Workers Union, 205 F.3d 922, 928 (6th Cir.), cert. denied, 531 U.S. 820 (2000). An arbitrator's procedural determinations should be set aside by a court only when the arbitrator is guilty of misconduct or bad faith. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 40 (1987). No one contends that either

_____

[1]Counsel for the railroad conceded during oral arguments that the materials could properly have been read aloud to the neutral arbitrator.

-5-

exception applies to this case. Therefore the arbitrator's procedural determination that the submissions were not "new material" and could be reviewed should be respected. In addition, as we have already explained, the neutral member's interpretation of this phrase was a permissible one.

The railroad suffered no fundamental unfairness because of the neutral arbitrator's conclusion. The union's submissions were not ex parte. Its opponent had full knowledge of them and objected to their admission. Further, had the submissions contained something that the railroad considered devastating to its case, it could have submitted its own summary that addressed the union's arguments. It did not do so. The material could have been read aloud at the hearing.

We reverse the District Court's grant of summary judgment for the railroad and remand this case to the District Court with instructions to enter summary judgment enforcing the arbitration award.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.