# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3697

_____

Lighting & Power Services, Inc., a
corporation, for the use and
benefit of United States of
America,

        Appellant,

    v.

Wayne M. Roberts, doing
business as Robinson Quality
Constructors, Inc.; United States
Fidelity and Guaranty Company, a
corporation,

        Appellees.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Eastern District of Missouri.

[PUBLISHED]

_____

Submitted: September 11, 2003
Filed: January 13, 2004

_____

Before LOKEN, Chief Judge, HEANEY and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Lighting & Power Services ("LPS") filed suit against Wayne M. Roberts, Inc. ("Roberts") to recover additional construction costs pursuant to the Miller Act, 40 U.S.C.A. §§ 3131-3133 (West Supp. 2003).[1] A jury found in favor of Roberts. On appeal, LPS argues that the district court erroneously instructed the jury on the total cost method of recovery. We agree, we reverse the judgment of the district court, and we remand for further proceedings.

## I. Background

This dispute stems from a government construction project at Jefferson Barracks in St. Louis, Missouri. Roberts was the general contractor for the United States government; LPS was Roberts's electrical subcontractor. The construction contract required Roberts to obtain a payment bond under the Miller Act to protect subcontractors and suppliers.[2] The renovation was scheduled for completion in six months, but ultimately took over twenty-two months. Both parties conceded that the government caused the delays.

---

[1] Formerly codified at 40 U.S.C. § 270b (2000) (revised and recodified by Pub. L. No. 107-217, 116 Stat 1062 (Aug. 21, 2002)).

[2] 40 U.S.C. § 3131(b):

Type of bonds required. --Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government the following bonds, which become binding when the contract is awarded:

. . .

(2) Payment bond. --A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person.

Roberts furnished this bond through its surety United States Fidelity and Guaranty Company.

LPS filed suit under the Miller Act, seeking to recover the additional costs it incurred as a result of the delay.[3] LPS used the total cost method to calculate its damages and sought $110, 641.00. The district court instructed the jury as follows:

Instruction No. 5

In this case, the plaintiff seeks to prove its alleged damages by evidence of its total costs of performing its subcontract with Wayne M. Roberts, Inc. In order to establish damages in this way, the plaintiff must prove by a preponderance of the evidence that:

1. It is impracticable for the plaintiff to prove its actual losses directly;
2. The plaintiff's bid that was accepted by Wayne M. Roberts, Inc. was reasonable;
3. Plaintiff's actual costs were reasonable;
4. Defendant has some responsibility in causing plaintiff's actual losses; and
5. Plaintiff incurred damages as a consequence.

(Appellant's App. at 129.) The jury returned a verdict in favor of Roberts. On appeal, LPS argues that subpart four of the instruction was given in error because the Miller Act permits LPS to recover its additional costs of labor and materials regardless of

---

[3] 40 U.S.C.A. § 3133(b)(1) (West Supp. 2003):
Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

Roberts's responsibility for causing those costs. Roberts responds that subpart four of the instruction was required by the law of this circuit because LPS chose to calculate its damages using the total cost method.

## II. Standard of Review

A district court has broad discretion in formulating jury instructions. Generally, we review jury instructions given by a district court for abuse of discretion. Hartley v. Dillards, Inc., 310 F.3d 1054, 1058 (8th Cir. 2002). Our review is limited to determining whether the instructions, when taken as a whole and in light of the particular issues presented, fairly and adequately presented the evidence and the applicable law to a jury. Id. at 1058-59. We will not reverse for instructional error unless we find that the error affected the substantial rights of the parties. Id. at 1059.

A litigant's objection to a jury instruction must comply with Federal Rule of Civil Procedure 51 in order to be preserved for appellate review. At the time of this trial, Rule 51 required a party to make objections to a jury instruction before the jury retired. When a party fails to comply with Rule 51, we are limited to reviewing the district court's decision for plain error. Jones Truck Lines, Inc. v. Full Serv. Leasing Corp., 83 F.3d 253, 256-57 (8th Cir. 1996).

After carefully reviewing the transcript, we hold that LPS's objections to instruction five were sufficient for the purposes of Rule 51, as it existed at the time of trial. During the instructions conference at the conclusion of evidence, LPS made known on the record its precise objections to the court's proposed instruction, particularly as to subpart four of instruction number five. (Tr. Vol. III, pp. 68, 69, 72, 74.) The trial court also clearly indicated that it was overruling the objections and would give the objected-to instruction to the jury. (Id. at 82.) This court has held that Rule 51 does not require rigid formality in making an objection, as long as the district court was clearly aware of a litigant's objections. Brown v. Sandals Resorts Int'l, 284 F.3d 949, 953 n.6 (8th Cir. 2002) (citing Meitz v. Garrison, 413 F.2d 895, 899 (8th

4

Cir. 1969)). We are convinced that the district court well understood the nature of LPS's objection, and that it would have given the same instruction even if LPS's counsel had restated the objection after the jury was instructed and before it commenced deliberation. See Ross v. Garner Printing Co., 285 F.3d 1106, 1112 (8th Cir. 2002).

We note that Rule 51 was substantially revised effective December 1, 2003.[4]

---

[4]Federal Rule of Civil Procedure 51now states, in relevant part:

(b) Instructions. The court:
    (1) must inform the parties of its proposed instructions and proposed action on the requests before instructing the jury and before final jury arguments;

    (2) must give the parties an opportunity to object on the record and out of the jury's hearing to the proposed instructions and actions on requests before the instructions and arguments are delivered; and

    (3) may instruct the jury at any time after trial begins and before the jury is discharged.

(c) Objections.
    (1) A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection.

    (2) An objection is timely if:

        (A) a party that has been informed of an instruction or action on a request before the jury is instructed and before final jury arguments, as provided by Rule 51(b)(1), objects at the opportunity for objection required by Rule 51(b)(2); or

        (B) a party that has not been informed of an instruction or action on a request before the time for objection provided under Rule 51(b)(2) objects promptly after learning that the instruction or request will be, or has been, given or refused.

The Supreme Court's order of March 27, 2003, amending the Rule states that the amended rule "shall govern in all proceedings in civil cases thereafter commenced, and, insofar as just and practicable, all proceedings then pending." Applying new Rule 51(b) and (c) to the record of the instruction conference held in this case, we conclude that LPS's objection to instruction five was both adequate and timely.

## III. Jury Instruction 5

We first address the question of whether, in order to recover delay damages under the Miller Act, a subcontractor is required to show that the general contractor was at least partially to blame for the subcontractor's actual losses. We hold that the Miller Act does not require that the general contractor be at fault in order for the subcontractor to recover on the Miller Act payment bond.

This court first addressed this question in Consol. Elec. & Mech., Inc. v. Biggs Gen. Contracting, Inc., 167 F.3d 432 (8th Cir. 1999). In Consolidated, an electrical subcontractor sued a general contractor and a surety company on a payment bond under the Miller Act. Consolidated, 167 F.3d at 433-34. During construction, the contractors had experienced numerous and prolonged delays, and the district court awarded Consolidated damages under the Miller Act. Id. at 434. On appeal, Biggs, the general contractor, argued that the district court erred when it held Biggs liable for all of Consolidated's Miller Act recovery, after the court had acknowledged that Biggs had been only partially at fault. Id. First, this court noted that the general contractor was, in fact, partially at fault. Id. Nevertheless, this court affirmed the district court, holding that a subcontractor can recover regardless of the fault of the general contractor. Id. at 435.

> Several circuits have interpreted the Miller Act to allow full recovery by a subcontractor when the general contractor is not wholly at fault for the delays . We agree with the reasoning of these circuits. The Miller Act favors allowing full recovery from a general contractor regardless of

6

fault because general contractors have privity of contract with the government and can thus recover delay damages directly from the government, while subcontractors cannot.

Id. at 434-35(citations omitted) (emphasis added). See also Mai Steel Serv. Inc. v. Blake Constr. Co., 981 F.2d 414, 419 (9th Cir. 1992) ("The Miller Act does not limit a subcontractor's recovery to situations where the general contractor is at fault. Indeed, we have allowed a subcontractor to recover against a Miller Act surety for labor and materials furnished to a subcontractor where the general contractor was blameless."); United States ex rel T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex., 942 F.2d 946, 951(5th Cir. 1991) ("[A] subcontractor can recover increased out-of-pocket costs for labor and materials furnished in the course of performing its subcontract caused by contractor or government delay.").

The second issue is whether the use of the total cost method to calculate damages requires a showing that the general contractor was at least partially responsible for the subcontractor's losses, even though the Miller Act does not require such a showing. We also answer this question in the negative, and we hold that the total cost method can be used to calculate damages under the Miller Act, regardless of the fault of the general contractor.

Under the total cost method, the "total cost" is defined as the actual cost minus any cost already paid on the contract.[5] Moorhead Constr. Co. v. City of Grand Forks, 508 F.2d 1008, 1015 (8th Cir. 1975). There is a four-part test for using the total cost method.

_____

[5]In non-Miller Act cases, the "total cost" may generally include reasonable lost profits. Neb. Pub. Power Dist. v. Austin Power, 773 F.2d 960, 965 (8th Cir. 1985); Layne-Minnesota p. r., Inc. v. Singer Co., 574 F.2d 429, 434 (8th Cir. 1978). However, the Miller Act does not encompass recovery for lost profits. Consolidated, 167 F.3d at 436.

> The acceptability of the (total cost) method hinges on proof that (1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses.

Id. at 1016 (citations omitted). In the present case, Instruction 5 did not require the jury to find that LPS "was not responsible for the added expenses," as in Moorhead, but instead required the jury to find that "[Roberts] ha[d] some responsibility in causing plaintiff's actual losses." Relying on Neb. Pub. Power Dist. v. Austin Power, 773 F.2d 960 (8th Cir. 1985), Roberts argues that under the law of this circuit, the application of the total cost method required the jury to find that Roberts had some responsibility in causing LPS's losses. We find that Austin Power is distinguishable.

In Austin Power, the Nebraska Public Power District contracted with Austin Power, a subcontractor, for labor and construction equipment to build an electric generating plant. Id. at 962. The project took eleven months longer to finish than scheduled, at a substantially higher cost to both parties. Id. at 962-63. Nebraska Power paid Austin half of the amount in excess of the projected costs (the "overrun" costs) pursuant to the terms of the contract. Id. at 963. Nebraska Power then sued Austin, saying that Austin had been primarily responsible for the delays, and therefore Nebraska Power should not have been required to cover any of Austin's overrun costs. Id. Austin counterclaimed for breach of contract and submitted its damages calculations in three different ways, one of which was the total cost method. Id. at 965. The jury instruction on total cost damages stated that in order to recover the requested damages, Austin needed to prove the following:

> a. The nature of the particular losses claimed by Austin Power [made] it impossible or highly impracticable to determine them with a reasonable degree of accuracy;
> b. The bid or estimate of Austin Power was realistic;
> c. The actual cost incurred by Austin Power was

8

reasonable;

    d.     Austin Power was not responsible for the amount sought to be recovered above the amount previously paid under the contract; and

    e.     The costs which make up the amount sought to be recovered were proximately caused by [Nebraska Power's] breaches of contract.

Id. 965-66. The jury awarded Austin breach of contract damages. Id. at 966. This court affirmed, holding that the district court had properly submitted total cost evidence to the jury. Id. at 968.

Austin Power is readily distinguishable from the case at hand, principally because Austin Power is not a Miller Act case. Austin Power involved state law negligence and breach of contract claims. Id. at 963-64. The instruction given by the trial court in Austin Power was suited to a breach of contract case where a jury must also find cause in fact. Such an instruction would not fit a Miller Act claim because the Miller Act does not govern actions by a subcontractor against a general contractor for breach of contract. Consolidated, 167 F.3d at 435.

There are cases that interpret the final factor of the total cost method to require a subcontractor to prove not only that it was not responsible for the added expenses, but also that the defendant was responsible for them. See, e.g., Youngdale & Sons Constr. Co. v. United States, 27 Fed. Cl. 516, 546 (1993). We do not think that those cases are applicable here. First, Instruction 5 did not require LPS to prove that it was free from fault, and Roberts makes no claim that LPS caused its own delay damages. Second, the cases containing such instructions are not Miller Act cases. They are breach of contract cases, and the marshaling instructions used understandably combined the necessary fault elements with the calculation of damages. Several cases using the total cost method have recognized a distinction between finding fault and calculating damages. "Difficulty in computing damages ought not to be confused

9

with the requirement of proving damages as an essential element of recovery." McKie v. Huntley, 620 N.W.2d 599, 604 (S.D. 2000). "Properly considered, [the total cost] approach is not a substitute for proof of causation; it is simply a method for calculating damages." Id. at 604. See also Amelco Elec. v. City of Thousand Oaks, 38 P.2d 1120, 1130 (Cal. 2002) ("The total cost method is not a substitute for proof and causation.") (citation and internal marks omitted). Because we have already held that under the Miller Act a subcontractor can recover additional expenses incurred because of delay regardless of the fault of the general contractor, the district court erred when it required LPS to prove that Roberts had some responsibility for causing LPS's losses.

For the reasons stated, we reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

_____