# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-3077

———————————————

Meridian Medical Technologies, Inc.

*Plaintiff - Appellant*

v.

International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 688

*Defendant - Appellee*

————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

————————

Submitted: September 18, 2024
Filed: November 7, 2025

————————

Before BENTON, GRASZ, and KOBES, Circuit Judges.

————————

BENTON, Circuit Judge.

Arbitrator Mark W. Suardi ordered the reinstatement of Cherie A. Miller at Meridian Medical Technologies, Inc. Meridian seeks to vacate the award, arguing the arbitrator exceeded his authority, and the award violates public policy. The

district court[1] disagreed, granting summary judgment to Miller's Union, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 688. Meridian appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Meridian manufactures emergency use auto-injectors used in EpiPens and similar devices. These products are both a drug and a medical device. **21 C.F.R. § 3.2(e)**. Their manufacture is regulated by the United States Food and Drug Administration through the Food, Drug and Cosmetic Act. The FDCA prohibits the introduction of adulterated drugs or medical devices into interstate commerce. **21 U.S.C. § 331**. A drug is adulterated if its manufacture does not conform with "current good manufacturing practice." **21 U.S.C. § 351(a).** FDA regulations require Meridian to maintain proper training procedures to ensure current good manufacturing practice. *See* **21 C.F.R. §§ 211.25, 211.180**.

Meridian's policy for proper on-the-job training is:

- to assign trainers to probationary employees for OJT;

- to require the trainer and trainee to complete OJT forms;

- for the trainee to certify, on completion, her competence;

- for the trainer to certify observing the trainee's completion, the trainee's understanding of the learning, and ability to complete the task; and

- for a supervisor to review and approve the training, permitting the trainee to undertake production tasks.

---

[1] The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

Meridian employed Miller, a senior technician, as a qualified trainer at its facility in St. Louis County, Missouri. She was assigned to train a probationary employee. A Meridian supervisor noticed that Miller certified that the employee completed five OJTs in one day. This spawned an investigation. In June 2020, Meridian terminated Miller for this (alleged fraudulent) certification. Meridian believes Miller did not comply with its policy because the OJT forms lacked supporting documentation and the employee did not display proficiency in the OJT tasks. Miller timely filed a grievance.

By the collective bargaining agreement between Meridian and the Union, all probationary employees must complete training during the 90-day probationary period. Meridian has the right to "maintain efficiency, assign work and duties in accordance with the needs of the Employer" and "to impose discipline up to and including the act of discharge." Meridian must provide a comprehensive training program and materials necessary for required tasks. Meridian may terminate a Union employee if it shows "just cause":

> No prior disciplinary action need be issued to an employee before they are suspended/discharged if the cause of such suspension/discharge is *dishonesty*, drunkenness, observed sleeping on the job while the employee is expected to be performing work, fighting on the job or otherwise violating the Company's Workplace Violence policy, *document alteration and/or falsification (including signing for work that was not performed by/checked by the colleague(s) who signed for the work)*, three consecutive days of unreported absence (unless there are unusual/extenuating circumstances), possession and/or use of illegal drugs, willful or gross negligence or willful or gross misconduct that results in loss of Employer property or product, refusal to obey a direct work order, and any other serious misconduct.

(emphasis added). The CBA's grievance and arbitration procedure states, "The arbitrator shall have no authority to add to, detract from or modify the provisions of this Agreement."

-3-

Meridian contends it discharged Miller for "dishonesty" or "document alteration and/or falsification." The Union counters that like the common practice, Miller could conduct and observe five OJTs in one day, and thus Meridian lacked just cause to terminate her.

The arbitrator ordered Miller reinstated with full seniority, no loss of benefits, and back pay (less any compensation received after termination). The arbitrator found that Meridian failed to show by a preponderance of the evidence that Miller's certification of the OJTs was "intentionally fraudulent" or "falsified."

The arbitrator found:

- Meridian had always been "short-handed" for Miller's shift;

- this insufficient staffing "resulted in a rush to get people trained, employees frequently working double shifts, grievances over the forced movement of employees and some trainers receiving overtime in order to train new employees";

- Miller and others "received instructions to sign off on documents and to train employees in a manner contrary to the actual process for OTJ training";

- it was acceptable on Miller's shift for non-qualified trainers "to confirm a trainee's performance of particular OJT tasks";

- it was common practice on Miller's shift "for a qualified trainer to observe a trainee performing a task with another qualified employee";

- "it was a common practice which was known to supervisors to train or observe a trainee over a period of time before sign off"; and

- "it was an acceptable practice to sign off on OJTs once a trainee was fully trained, not on each day throughout the training process."

The arbitrator also drew an adverse inference against Meridian for not calling either of Miller's two direct supervisors to testify—both still employed by Meridian and with knowledge of the allegations, while it called other employees.

Meridian moved to vacate the award at the district court, arguing the arbitrator exceeded his authority, and the award violates public policy. The district court granted the Union summary judgment, affirming the arbitrator's award. Meridian appeals.

II.

Reviewing a district court's order affirming an arbitration award, this court reviews conclusions of law de novo and findings of fact for clear error. *Williams v. NFL*, 582 F.3d 863, 883 (8th Cir. 2009). Arbitration agreements are governed by the Federal Arbitration Act. *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001), *citing* **9 U.S.C. §§ 1–16**. The FAA's purpose is to prevent judicial hostility towards arbitration agreements. *Id*. The "scope of review of the arbitration award itself is among the narrowest known to the law." *Brotherhood of Maint. of Way Emps. v. Terminal R.R. Ass'n*, 307 F.3d 737, 739 (8th Cir. 2002).

Under the FAA, a court may vacate an arbitration award only where corruption, fraud, undue means, evident partiality, misconduct, or ultra vires acts existed in its procurement. *See Williams*, 582 F.3d at 883, *summarizing* **9 U.S.C. § 10(a)**. This court recognizes two "extremely narrow" circumstances where it can vacate an arbitration award: (1) where an award fails to draw its essence from the agreement, and (2) where the arbitrator's decision manifests disregard for the law. *Hoffman*, 236 F.3d at 461–62.

"The jurisdiction of the arbitrator is determined by the arbitration agreement." *Terminal*, 307 F.3d at 739. Reviewing an award, this court's "sole function is to decide whether the arbitrators' decision draws its essence from the contract." *Hoffman*, 236 F.3d at 461, *quoting* **Executive Life Ins. Co. v. Alexander Ins. Ltd.**,

999 F.2d 318, 320 (8th Cir. 1993) (per curiam). "An arbitrator's award draws its essence from the parties' agreement as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Williams*, 582 F.3d at 883 (cleaned up).

True, this court vacates an award that ignores the plain language of the agreement. But, an arbitrator may interpret ambiguous language. *Terminal* 307 F.3d at 739–40. In interpreting silent or ambiguous language, the arbitrator must consider the parties' intent. *See* ***Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers***, 309 F.3d 1075, 1081 (8th Cir. 2002). This court cannot set aside an award simply because it believes the arbitrator erred in interpreting the law or determining facts. *Hoffman*, 236 F.3d at 462. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," this court cannot set aside the award on interpretation grounds, not even for a "serious error." ***United Paperworkers Int'l Union v. Misco, Inc.***, 484 U.S. 29, 38 (1987).

Meridian argues the award fails to draw its essence from the CBA in both its interpretation and its inference-finding. It also argues that public policy counsels against Miller's reinstatement.

### III.

Meridian argues that the award failed to draw its essence from the CBA in its interpretation of "just cause." Meridian emphasizes that the CBA requires only "dishonesty" or "document alteration and/or falsification." Meridian attacks the arbitrator's interpretation that "dishonesty" and "falsification" are synonymous with "intentionally fraudulent." Meridian believes it did not need to show by a preponderance of the evidence that Miller acted with an intent to deceive. Meridian contends that by adding an intent element, the arbitrator made an unauthorized modification of the CBA.

The arbitrator's interpretation of the CBA was within his authority. While the CBA prohibits adding to or modifying its terms, the CBA does not define "dishonesty." The term thus is ambiguous, authorizing the arbitrator to interpret its meaning. *See Terminal*, 307 F.3d at 740. Meridian stresses that the CBA defines "document alteration and/or falsification" as including "signing for work that was not performed by/checked by the colleague(s) who signed for the work." This definition includes dishonesty. The arbitrator reasonably decided that at the heart of all dishonest, false, or fraudulent acts is the intent to deceive. *See id*. *Cf. United Fire & Cas. Co. v. Historic Pres. Tr.*, 265 F.3d 722, 731 (8th Cir. 2001) ("[U]nder Missouri law, misrepresentation requires an intent to deceive."). *See generally Bryan A. Garner*, **Garner's Modern English Usage: The Authority on Grammar, Usage, and Style** 443 (5th ed. 2022) ("[F]alse, in a phrase such as *false statement*, is potentially ambiguous where intent is concerned, since the word may mean either 'erroneous, incorrect' or 'purposely deceptive.'"). The arbitrator acted within his authority in his arguable interpretation of the CBA's terms. *See Misco*, 484 U.S. at 38.

Meridian also argues that the award does not draw its essence from the CBA because the arbitrator went beyond its four corners by examining the parties' intent. However, the silent or ambiguous language required the arbitrator to consider "other relevant sources of the parties' intent, such as their past practices." *Exide Techs. v. International Bhd. of Elec. Workers, Loc. No. 700*, 964 F.3d 782, 787 (8th Cir. 2020) (cleaned up), *quoting Boise Cascade*, 309 F.3d at 1082.

The award drew its essence from the CBA. The arbitrator's interpretation does not fall under the first "extremely narrow" exception. *See Hoffman*, 236 F.3d at 461–62.

## IV.

Meridian argues that the arbitrator exceeded his authority by drawing an adverse inference against it for failing to call Miller's direct supervisors as witnesses.

-7-

Meridian tries to meet the second "extremely narrow" exception to overturn the award. This court does not examine whether the adverse inference was appropriate, only whether it is a manifest disregard for the law. *See id*.

The key here is whether Meridian bears the burden of proof for the adverse inference issue. *See Boardman v. National Med. Enters.*, 106 F.3d 840, 844 (8th Cir. 1997). "Drawing an adverse inference from the failure of a party to put on key witnesses relevant to some issue is most reasonable when it is the party with the burden of proof on that issue who fails to do so." *Id*. The arbitrator had discretion to allocate to Meridian the burden to prove just cause to terminate Miller. *See Alvey, Inc. v. Teamsters Loc. Union No. 688*, 132 F.3d 1209, 1212 (8th Cir. 1997) (holding that this court ordinarily cannot review "[a]n arbitrator's decision allocating the burden of proof among the parties" without "specific controlling language in the collective bargaining agreement"), *quoting Sullivan, Long & Hagerty, Inc. v. Local 559 Laborers' Int'l Union*, 980 F.2d 1424, 1429 (11th Cir.1993). *Cf. Ross v. Garner Printing Co.*, 285 F.3d 1106, 1113 (8th Cir. 2002) (in applying Iowa law, holding that "in a case arising under a 'for cause' employment contract, it is generally held that the employer has the burden of proving cause for termination"); *Hirsch v. Convergys Customer Mgmt. Grp., Inc.*, 422 S.W.3d 525, 529 (Mo. App. 2014) (stating under Missouri law, "the burden shifts to the employer to prove misconduct connected with work when the employer asserts the employee was discharged for misconduct"). Meridian called witnesses who testified about Miller's execution of the five OJTs. Yet, the direct supervisors were never called to testify. "[I]t has long been 'settled that if a party fails to produce the testimony of an available witness on a material issue in the case, it may be inferred that his testimony, if presented, would be adverse to the party who fails to call the witness.'" *Kostelec v. State Farm Fire & Cas. Co.*, 64 F.3d 1220, 1229 (8th Cir. 1995), *quoting Illinois Cent. R.R. Co. v. Staples*, 272 F.2d 829, 834 (8th Cir. 1959). Because Meridian had the burden of proof and its supervisors were available and possessed pertinent information, the arbitrator's adverse inference was not a manifest disregard for the law. The arbitrator acted within his authority.

V.

Meridian argues that Miller's reinstatement violates public policy. Even if the arbitrator acts within his contractual authority, this court can still overturn an award on public policy grounds. *See **Iowa Elec. Light & Power Co. v. Local Union 204 of Int'l Bhd. of Elec. Workers***, 834 F.2d 1424, 1427 (8th Cir. 1987). This exception, however, is narrow. ***WM Crittenden Ops., LLC v. United Food & Com. Workers, Loc. Union 1529***, 9 F.4th 732, 736 (8th Cir. 2021). For this court to revoke the arbitration award on public policy grounds, the public policy "must be well defined and dominant." ***W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum, & Plastic Workers***, 461 U.S. 757, 766 (1983). The public policy must also be established by existing law, "not from general considerations of supposed public interests." ***Misco***, 484 U.S. at 44, *quoting **W.R. Grace***, 461 U.S. at 766. Even if a well-defined and dominant public policy exists, this court still adopts the arbitrator's view of the facts. *See **id**. at 37–38, 44; **WM Crittenden***, 9 F.4th at 736.

For arbitration awards of employment disputes, this court focuses on whether the arbitrator's reinstatement decision violates public policy, not whether the employee's behavior violates public policy. ***Entergy Ops., Inc. v. United Gov't Sec. Officers of Am. Int'l Union***, 856 F.3d 561, 565 (8th Cir. 2017). ***WM Crittenden***, 9 F.4th at 736. The clearest examples of well-defined and dominant public policies against reinstatement awards are where the law, legal precedent, or regulations contain "specific and exacting requirements" or explicitly forbid or restrict reinstatement. *See **Boehringer Ingelheim Vetmedica, Inc. v. United Food & Com. Workers***, 739 F.3d 1136, 1142 (8th Cir. 2014), *discussing **Iowa Electric***, 834 F.2d at 1427–29. *See also **MidAmerican Energy Co. v. International Bhd. of Elec. Workers Loc. 499***, 345 F.3d 616, 621 (8th Cir. 2003) (affirming an arbitration award where the regulatory framework lacked "the specific and exacting requirements found" in *Iowa Electric*); ***Eastern Associated Coal Corp. v. UMW, Dist. 17***, 531 U.S. 57, 65 (2000) (affirming an arbitration award where "[n]either the Act nor the

regulations forbid an employer to reinstate in a safety-sensitive position an employee who fails a random drug test once or twice").

Meridian relies on cases where the law and regulations are specific and exacting, or explicitly forbid or restrict a reinstatement. *See Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 673–74 (11th Cir. 1988) (reinstatement through arbitration is improper if regulations require airlines to prevent intoxicated pilots, like the employee, and the arbitrator was unauthorized to consider the employee's rehabilitation); *Union Pac. R. Co. v. United Transp. Union*, 3 F.3d 255, 261–62 (8th Cir. 1993) (reinstatement through arbitration is improper if the Federal Railroad Administration's regulations expressly forbid reinstating an employee who abused drugs or alcohol while on duty before "the employee had completed certain steps designed to prevent future incidents"); *Iowa Electric*, 834 F.2d at 1427–29 (reinstatement through arbitration is improper if the employee "broke a safety rule that was put in place pursuant to a strict regulatory scheme devised by Congress," and where the regulatory agency had promulgated "volumes of safety rules that govern all nuclear power plants"). The arbitrators in these cases all found the employee violated the regulations. The arbitrator here, however, found Miller's preparation of the OJTs was not "intentionally fraudulent" or "falsified." Also, neither the FDCA nor FDA regulations governing auto-injector training forbid or restrict reinstating an employee for a procedural training violation. *Cf.* **21 U.S.C. § 351(a); 21 C.F.R. §§ 211.25, 211.180**. The regulations here do not "evidence a well-defined and dominant public policy" that prohibits Miller's reinstatement for procedural training violations condoned by the employer. *Boehringer*, 739 F.3d at 1143. *See Misco*, 484 U.S. at 43–44.

Meridian asserts that the "well-defined and dominant" policy framework allows for overturning an award if the policy implicates safety with the potential to affect the public. Based on hypotheses of emergencies, Meridian claims that manufacturing its medical devices "is firmly rooted in common sense." *Misco*, 484 U.S. at 44.

Based on the arbitrator's finding of facts, it is Meridian that disregards common sense in its training practices.  Meridian asks this court to defy *W.R. Grace* and *Misco* and formulate public policy from the "underlying conduct leading to the arbitration."  ***PaineWebber, Inc. v. Agron***, 49 F.3d 347, 350 (8th Cir. 1995), *citing* ***Misco***, 484 U.S. at 44 and ***W.R. Grace***, 461 U.S. at 766.  This court cannot ignore the requirement for a well-defined and dominant policy.  *See **id.*** (holding this court cannot "set aside [an] award in the absence of a well-defined and dominant policy"); ***Iowa Electric***, 834 F.2d at 1429 (stating that not every employee who breaches a public safety regulation should be discharged).  "A refusal to enforce an award must rest on more than speculation or assumption."  ***Misco***, 484 U.S. at 44.  Meridian's public policy argument is speculation that Miller might violate training procedures that harm the public.  The arbitrator's award reinstating Miller does not violate a well-defined and dominant public policy.

In this case, vacating the award would undermine the federal policy of settling labor disputes by arbitration and burden the courts.  *See **United Steelworkers of Am. v. Enterprise Wheel & Car Corp.***, 363 U.S. 593, 596 (1960).  The district court did not err in affirming the arbitrator's award.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____